837 So.2d 684 (2002)
STATE of Louisiana
v.
Eugene FORTINO.
No. 02-KA-708.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2002.
*685 Arcenious F. Armond, Jr., Gretna, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, Thomas J. Butler, Counsel of record on appeal, Frank Brindisi, Trial Counsel, Rob Konrad, Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and CLARENCE E. McMANUS.
*686 JAMES L. CANNELLA, Judge.
The Defendant, Eugene Fortino, appeals from his conviction of second degree battery and his sentence to four years imprisonment at hard labor. We affirm the conviction and sentence and remand.
The Defendant was charged on August 22, 2001 with second degree battery on his estranged wife, Constantina Lopipero (Lopipero), a violation of La.R.S. 14:34.1. He pled not guilty at arraignment. On October 23, 2001, the State filed a Notice of Intent to Use Evidence of Other Crimes. The motion was heard and granted. Supervisory writs were applied for and denied in this Court in January of 2002.[1] The Louisiana Supreme Court also denied writs.[2] On January 30, 2002, a six-person jury found the Defendant guilty as charged and the trial judge sentenced the Defendant on February 22, 2002 to four years imprisonment at hard labor.
Lopipero testified that she and the Defendant met in April of 2000 and were married on July 21, 2001. On the night of July 27, 2001, as the couple was preparing to go to sleep in their house in Marrero, Lopipero, as usual, opened a window a few inches for her cat. Earlier that night, the Defendant had closed it, even though he knew that she liked to leave it open. When the Defendant discovered the open window, he became extremely angry. He told her, "I'm sick of you, and I'm sick of your fing cat, you bitch." Lopipero told him that she did not want him to curse at her. The Defendant grabbed her from behind, clutching her in a chokehold. He forced her onto the bed as he continued to choke her. She testified that she could not breathe, she felt her neck crack and she feared for her life. The Defendant also kicked her from behind. Although Lopipero attempted to push defendant away, she was not strong enough. The Defendant weighs about 200 pounds and she weighs about 109 pounds. During the struggle, the Defendant told her that he was the man of the house and that he was going to "teach her a fing lesson." Lopipero then lost consciousness. When she regained her faculties, Lopipero went into the living room and sat on the sofa. She was having difficulty breathing. She felt as if she were dying and would never see her family again. The Defendant followed her into the living room and sat next to her. Although she tried to placate him, he beat her about the head and face seven to eight times. When he stopped, Lopipero told the Defendant that she was going outside to smoke a cigarette, thinking she could escape him. However, the Defendant followed her. At 4:00 a.m. he told her to go back inside with him and she complied. The Defendant then ordered her to lay down in a chair with him and they had sexual relations. She testified that she did so because she was afraid that he would beat her again if she did not cooperate. The Defendant fell asleep, but Lopipero was afraid to leave for fear that she would awaken him.
After the Defendant left for work the morning of July 28, Lopipero telephoned her friends, Jackie and David. She told them what the Defendant had done to her and they instructed her to leave the house and meet them at a filling station. Meanwhile, David called police and she returned to the house to meet with the officers.
Deputy Al Hymel met with Lopipero at her house. Lopipero testified that she showed the officer a bump on her head, a cut over her eyebrow, and facial swelling. She said that she had a clot in her eye and *687 the inside of her mouth was cut. Deputy Hymel testified that the victim's neck and left side of her face were red. The area around her eye was swollen and there was a scratch above her left eye. He felt a bump on the back of her head. He testified that Lopipero did not have any scars or broken bones. Based on his investigation, Deputy Hymel obtained an arrest warrant for the Defendant.
Lopipero testified to instances of abuse that occurred prior to the July of 2001 incident. She stated that she was diagnosed with multiple sclerosis in April of 2001. She experienced symptoms such as general weakness, difficulty walking, and vision problems. The Defendant would not allow her to mention her symptoms to him, because he felt that she had brought the illness on herself by letting "Satan" into her.
In February of 2001, the Defendant was driving her home from a play at his church when the couple became involved in a heated argument about the play's subject matter involving children being sent to hell. The Defendant grabbed Lopipero by the neck and banged her head against the window. He screamed at her that she was "the devil." Defendant later apologized to her and the two reconciled.
On May 26, 2001, the Defendant and Lopipero joined friends for dinner at a restaurant to celebrate their engagement. While at the restaurant, the Defendant flirted with a woman whom he had formerly dated. He told Lopipero that this woman was a "tiger." The following morning, as she was waking up, he again spoke to her about the former girlfriend. Lopipero asked him if he had to talk about the woman, and got up and went to shower. When she came back into the room, the Defendant grabbed her and threw her against the vanity, and said, "Do you want to get fed, bitch?" He also grabbed her by her throat and shoved her into the mirror. He continued to choke her until she fell to the floor. The Defendant told her that she had to learn to respect him. He then left the house to go to work. Although Lopipero was in a great deal of pain, she went to work that day, and later went with a friend and co-worker to pick up the Defendant's son from a former marriage. She was feverish and vomiting from the beating. When the Defendant returned home from work and saw how ill she was, he became violently angry, and denied that he had caused her injuries. Lopipero testified that she and the Defendant were married and spent their honeymoon in Las Vegas, Nevada. She testified that the Defendant struck her even during their honeymoon.
Attia Meda Gerhold (Gerhold), a friend of Lopipero's, testified that she telephoned her after the February of 2001 incident. She stated that Lopipero was crying hysterically. She told Gerhold that the Defendant had grabbed her by the throat and shoved her against the car window. Gerhold also saw Lopipero after the May of 2001 incident. Lopipero was very upset and pale, and was crouched over. She appeared to have internal injuries. Lopipero showed Gerhold the badly bruised left side of her body. Gerhold said that she has seen the Defendant verbally abuse Lopipero.
Angela Fortino (Fortino) testified that she married the Defendant in 1992 and divorced him seven years later. Fortino stated that throughout the marriage, the Defendant physically attacked her without provocation. He slapped her, attempted to strangle her, and threatened to kill her. In one instance, she blacked out as the Defendant continued to choke her. She suffered a fractured nose and pulled ligaments in her neck and shoulder in that incident. Fortino testified to another incident *688 in which the Defendant bit her face and foot.
The Defendant testified that he did not attempt to strangle Lopipero in July of 2001, but stated that he did push her away from him that night. The Defendant also denied hitting or choking Lopipero in May of 2001 and denied shoving her head against a car window after the church play in February of 2001. While he did not admit to the severe beatings alleged by the State, he admitted to having hit Fortino four or five times during the course of their marriage. He also testified that he slapped both of his wives. He claimed that he knew it was wrong to hit a woman, but that he did it in the heat of argument. He stated that his anger was relieved after he slapped his wives.
On appeal, the Defendant asserts that the evidence was insufficient, that the trial judge erred in admitting Prieur evidence, and that the sentence is excessive.
In the first assignment of error, the Defendant contends that the State failed to satisfy its burden of proof beyond a reasonable doubt that he is guilty of second-degree battery.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the elements of the crime in the light most favorable to the prosecution, to find the essential elements of the offense were proven beyond a reasonable doubt. State v. Evans, 00-1766, p. 3 (La.App. 5th Cir.4/11/01), 786 So.2d 781, 783, writ denied, 01-1390 (La.4/12/02), 812 So.2d 664; State v. Williams, 99-223, p. 6 (La.App. 5th Cir.6/30/99), 742 So.2d 604, 607.
La.R.S. 14:33 defines battery in part as "the intentional use of force or violence upon the person of another." La.R.S. 14:34.1 provides:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Defendant contends that the state failed to prove that Lopipero's injuries were sufficient to constitute "serious bodily injury" as intended by the second-degree battery statute. However, the Defendant choked her, shoved her across the bed, and kicked her. She could not breathe and thought she was going to die. As the Defendant continued to choke her, she felt her neck "crackle," and she "blacked out." When the Defendant finally released Lopipero from his grip, she still had difficulty breathing. He then beat her about the head and face. After the incident, she was in a great deal of pain. The Defendant's actions left marks on Lopipero's neck that were observed by Deputy Hymel on the following day. The beating also resulted in a large bump on her head, a cut over her eyebrow, and redness and swelling about her face. Although she did not sustain any permanent scarring or physical injury, she blacked out and was in jeopardy of losing her life. These injuries are sufficiently serious to rise to the level of second degree battery. Thus, we find that the evidence was sufficient to convict the Defendant under the Jackson standard.
The Defendant next contends that the trial judge erred in allowing the introduction *689 of other crimes evidence. He argues that the evidence was introduced only for the purpose of showing his bad character.
Evidence of other crimes committed by a defendant is generally not admissible at trial. La.C.E. art. 404 B(1); State v. Prieur, 277 So.2d 126, 128 (La.1973). However, when such evidence tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to the exclusionary rule. State v. Silguero, 608 So.2d 627, 629 (La. 1992); State v. Aleman, 01-743, p. 8 (La. App. 5th Cir.1/15/02), 809 So.2d 1056, 1064.
La.C.E. art. 404 B(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Under Prieur, the State must provide written notice to the defendant of the acts it intends to prove, along with the exception to the exclusionary rule upon which it relies. One of the factors enumerated in Article 404 B(1) must be at issue, have some independent relevance, or be an element of the crime charged. State v. Jackson, 625 So.2d 146, 149 (La.1993); State v. Maise, 99-734, p. 13 (La.App. 5th Cir.3/22/00), 759 So.2d 884, 893, writ granted, 00-1158 (La.9/14/01), 795 So.2d 1219, judgment aff'd, 00-1158 (La.1/15/02), 805 So.2d 1141. Prieur further requires that the State show by clear and convincing evidence that the Defendant committed the other crimes. However, La.C.E. art. 1104, enacted in 1994, requires that the burden of proof in a Prieur hearing in Louisiana courts be the same as that provided by the Federal Rules of Evidence, Art. IV, Rule 404. In Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the United States Supreme Court found the clear and convincing standard is no longer the required standard of proof, and that the applicable standard is a preponderance of the evidence.
This Court has recognized the preponderance of the evidence standard as the burden of proof in a Prieur hearing. See, State v. Aleman, 01-743 at p. 9, 809 So.2d at 1064; State v. Maise, 99-734, p. 13, 759 So.2d at 893; State v. Hernandez, 98-448, p. 18 (La.App. 5th Cir.5/19/99), 735 So.2d 888, 898, writ denied, 99-1688 (La.11/12/99), 750 So.2d 194.[3] The Louisiana Supreme Court, however, has consistently used the clear and convincing standard of proof, and has declined to address the question of how C.E. art. 1104 and Huddleston affect the burden of proof with respect to other crimes evidence. See: State v. Hills, 99-1750 (La.5/16/00), 761 So.2d 516; State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960.
The probative value of the extraneous evidence must outweigh its prejudicial *690 effect. State v. Maise, 99-734 at p. 13, 759 So.2d at 894. The burden is on the defendant to show that he was prejudiced by the trial court's admission of Prieur evidence. State v. Temple, 01-655, p. 20 (La.App. 5th Cir.12/12/01), 806 So.2d 697, 709.
In the writ application filed on this issue, this Court ruled that the trial judge did not err. The Louisiana Supreme Court denied writs. Nevertheless, we have again reviewed the matter and find no error.
The State filed a written Prieur notice on October 23, 2001, detailing the two prior incidents in which the Defendant physically attacked Lopipero, and two prior attacks by the Defendant on his first wife. In the notice, the State asserted that it would use those acts to show Defendant's knowledge, intent, guilty knowledge, system, and motive. At the Prieur hearing, Lopipero and Fortino testified as witnesses. The two women gave detailed and uncontradicted testimony regarding the beating incidents alleged in the written notice. Thus, the State proved the other crimes by a preponderance of the evidence, as well as by clear and convincing evidence.
We next find that the Prieur incidents were relevant for a purpose other than to show that Defendant committed the charged offense, or that he was simply a bad person. They were valid to show specific intent, an element of the charged offense. Although the Defendant argues that second degree battery is not a specific intent crime, and that other crimes evidence is not permitted to show general intent, the argument is not legally supportable. Second degree battery is a specific intent crime and the State was required to prove intent. State v. Fuller, 414 So.2d 306, 310 (La.1982); State v. Druilhet, 97-1717, p. 3 (La.App. 1st Cir.6/29/98), 716 So.2d 422, 423.
The prior crimes also show motive and system. Both Lopipero and Fortino testified that the Defendant beat them when he felt they were not showing him "respect." The prior acts detailed by the two women were remarkably similar to the acts alleged in the instant case. In each instance, the Defendant flew into a rage without provocation and inflicted severe injuries on his wives. As in the instant case, the Defendant choked the victims in the prior acts.
We further find that the probative value of the Prieur evidence outweighed any prejudice to the Defendant. At trial, the Defendant testified that he often became angry with his wives and that he hit them when he was angry. He knew that it was wrong, but it relieved his anger. When asked about the incident on May 26, 2001, in which he was alleged to have grabbed Lopipero by the neck and thrown her against a bedroom vanity, the Defendant claimed that he merely picked her up and sat her on the vanity in an effort to calm her. With respect to the February of 2001 incident in which the Defendant was alleged to have slammed Lopipero's head against the window of his vehicle, he stated that he only grabbed her by the shirt.
Based on the foregoing, we find that the trial judge did not abuse his discretion in admitting the evidence of other crimes and that the State met its burden of proof in that regard.

EXCESSIVE SENTENCE
The Defendant next complains that his four-year sentence is constitutionally excessive and that the trial judge failed to consider mitigating circumstances in arriving at the sentence. The Defendant argues that the trial judge failed to take into account factors such as his youth, his employment, his family ties, and the fact that he was in mental health counseling prior to *691 sentencing. He further argues that the trial judge improperly penalized him for opting to go to trial rather than enter into a plea agreement. The Defendant raised these issues below in a motion to reconsider sentence. The trial court denied the motion on April 8, 2002.
La.C.Cr.P. art. 894.1 C requires the trial judge to state for the record the considerations taken into account and the factual basis for imposing sentence. However, when the trial judge fails to articulate every circumstance listed in La. C.Cr.P. art. 894.1, a remand is not necessary if there is an adequate factual basis for the sentence contained in the record. State v. Fairley, 02-168, p. 8 (La.App. 5th Cir.6/26/02), 822 So.2d 812, 817.
In sentencing defendant, the trial judge stated:
I listened to this case, the jury found him guilty, and I listened to all the facts of the case, and I thought it was very it's a very hard situation when a man chokes his wife until she passes out, then steps over her form to fix his hair to go to work, it's a cold situation. You know, it'sand in addition to that, she's suffering from M. S., it's, you know, it's a hard situation. I didn't give him the maximum sentence, but I've taken all the sentencing guideline factors into consideration, and for me to give him any less of a sentence would be a travesty of justice.
Based on the foregoing and the jurisprudence, we find that the trial judge complied with the provisions of Article 894.1. In addition, the record supports the sentence imposed. The Defendant is a chronic abuser who does not think his actions are aberrant. He testified that he had attended an anger management class, but he enrolled in the class only after being ordered by a judge to do so. He did not seek counseling of his own accord.
The Defendant also complains that because the State offered first a one-year, then a two-year sentence in exchange for a guilty plea prior to trial, his sentence of four years constitutes a penalty for exercising his constitutional right to go to trial. At the time of sentencing, defense counsel argued:
For the record, Your Honor, this Court was amenable in pre-trial to a sentence of one year; later the individuals in this case were satisfied with the sentence of two years, and it appears for the record, and for purposes of appeal, that he's being punished for exercising his right to a trial, in violation of North Carolina versus Pierce [sic].
The judge replied,
"Not at all. Before the trial, I didn't hear any of the facts that were involved in the case, and I think he should find himself fortunate that it doesn't carry a heavier penalty."
In Bordenkircher v. Hayes, 434 U.S. 357, 363-364, 98 S.Ct. 663, 668-669, 54 L.Ed.2d 604 (1978), the United States Supreme Court stated:
To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecutor's offer....
While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult *692 choices [is] an inevitable"and permissible"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty. [Citations omitted]
There is no evidence in the record, and the Defendant does not claim, that he was not free to accept or reject the State's plea offers. The Defendant simply chose not to accept them, thereby taking the risk of a greater penalty upon conviction by a jury. Additionally, the trial judge heard more details of the Defendant's actions during trial. His sentence was not, therefore, vindictive. See also, State v. Tyler, 01-1038 (La.App. 5th Cir.3/26/02), 815 So.2d 205.
Defendant further argues that his sentence constitutes cruel and unusual punishment under the constitution. Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, Sect. 20; State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Richmond, 734 So.2d at 38; State v. Lobato, 603 So.2d 739, 751 (La. 1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D); Richmond, 734 So.2d at 38. In making this determination, the sentencing judge may consider not only convictions, but also past criminal behavior that did not result in a conviction. State v. Anderson, 02-273, p. 7 (La.App. 5th Cir.7/30/02), 824 So.2d 517, 522; State v. Gilbert, 00-1822, p. 5 (La.App. 5th Cir.5/16/01), 788 So.2d 574, 577. Nonetheless, a sentence may be reviewed for excessiveness even though it is within statutory range. Richmond, 734 So.2d at 38.
The Defendant's sentence is one year less than the five-year maximum provided by La.R.S. 14:34.1. However, the record shows that Defendant has a long history of abusing women after little or no provocation. The trial judge stated that he considered this fact, and found that a lesser sentence would deprecate the seriousness of the instant offense. Based on these facts, we find that the trial judge did not abuse his wide discretion in imposing a four-year sentence.

PATENT ERROR
The record was reviewed for patent errors, in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198.
Our review discloses that the trial judge did not advise the Defendant of the two-year prescriptive period for applying for post-conviction relief, as required under La.C.Cr.P. art. 930.8. Therefore, we remand the case with an order for the trial judge to send written notice to the Defendant that his application for post-conviction relief must be filed no more than 2 years after the judgment of conviction and *693 sentence has become final. The trial judge is to send this notification within ten days of the rendering of this opinion, then file written proof in the record that the Defendant received the notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, we hereby affirm the Defendant's conviction and sentence. We remand the case with an order to the trial judge to send to the Defendant, within ten days of the rendering of this opinion, written notice of the prescriptive period for post-conviction relief, and then to file written proof in the record that the Defendant received the notice.
CONVICTION AND SENTENCE AFFIRMED. CASE REMANDED.
NOTES
[1] State v. Fortino, 01-K-1364.
[2] State v. Fortino, 02-0277 (La.1/28/02), 807 So.2d 827.
[3] See, however, State v. Richard, 01-952, p. 9 (La.App. 5th Cir.1/29/02), 807 So.2d 1129, 1135-1136, in which a panel of this Court recognized the clear and convincing standard, but did not address the sufficiency of the evidence.