892 So.2d 702 (2005)
STATE of Louisiana, Appellee,
v.
April Shanay LEWIS, Appellant.
No. 39,263-KA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*703 Louisiana Appellate Project by Laura Pavy, Paula Corley Marx, Lafayette, for Appellant.
Robert W. Levy, District Attorney, Clifford R. Strider, III, Assistant District Attorney, for Appellee.
Before WILLIAMS, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
April Shanay Lewis ("Defendant") was tried and convicted by a jury on three counts of armed robbery. She was sentenced to three concurrent 20-year sentences at hard labor, without benefits. Defendant now appeals. For the reasons set forth herein, Defendant's convictions and sentences are affirmed.

FACTS
At approximately 12:45 p.m. on August 6, 2003, two masked armed robbers entered the Farmerville Highway branch of Community Trust Bank in Ruston, Louisiana, and yelled for everyone to get down and open up their cash drawers. The first robber, later self-identified as co-perpetrator Cameron Jones ("Jones"), was dressed in a white T-shirt, dark pants[1] and wore a *704 blue bandana as a mask and carried a realistic-looking black BB gun and a blue bag. Jones ran to the window of teller number one, manned by Jennifer Stuckey ("Ms. Stuckey"), who got down on the floor as he took the money out of her teller drawer.
The second robber, later identified by Jones as Defendant, was dressed in a dark blue "Old Navy" sweatshirt, blue jeans and a dark mask, and carried a Wal-Mart bag. Defendant ran to teller window number two, manned by Connie Wright ("Ms. Wright"), who was talking on the phone to her husband at the time. Defendant jumped up on the counter, pointed a gun in her direction, screamed profanities at her and demanded that she hang up the phone. Ms. Wright complied and handed over the money from her teller drawer.
Defendant then approached the drive-thru teller, Jana Gulledge ("Ms. Gulledge"), who was already on the ground. Defendant pointed the gun at Ms. Gulledge and demanded that she open both of her teller drawers, which she did. The money Ms. Gulledge surrendered included "bait" money, which was twenty-dollar bills with recorded serial numbers.
Co-perpetrator Jones later pled guilty to armed robbery and was sentenced to a lesser term of 15 years imprisonment at hard labor in exchange for his testimony at Defendant's trial. Jones testified that he, W.D. Wallace ("Wallace") and Defendant drove all night from California to Ruston the night before the crime in Wallace's dark green Honda. Jones, a sophomore at Grambling State University, needed to make a payment on the storage of his belongings. After spending the night in a motel, the trio went to several local banks, including the Community Trust Bank in Ruston, in an attempt to cash Jones' payroll check. None of the banks would cash the check because Jones did not have an account.
Jones testified that, at Wallace's suggestion, the trio agreed to rob the Community Trust Bank. Jones confirmed in his testimony that he wore black pants, a (light) white T-shirt and a blue bandana over his face, armed himself with Wallace's black BB gun and carried a blue backpack. He also confirmed that Defendant wore blue jeans, a dark blue "Old Navy" sweatshirt and a bandana. Jones testified that Wallace waited outside in the Honda while Defendant followed Jones into the bank through the side door.
Jones testified that he ordered a white female teller to get down, opened her teller drawer, took the money and put it into his backpack. He stated that he saw Defendant jump over a counter and tell a black female teller to put the money into a Wal-Mart bag. Jones stated that, after an unsuccessful attempt to access the vault, he and Defendant exited the bank through the door which they entered and Defendant handed him the Wal-Mart bag full of money, which he put in the backpack. Jones and Defendant then ran across the street toward the Honda (driven by Wallace), got in and headed west on Interstate 20. Jones testified that, while inside the Honda, he and Defendant changed clothes and stuffed those worn during the robbery into the trunk through the pull-down back seat.
A bulletin regarding the car was broadcast over the radio to all police agencies. Minden Police Lieutenant Dan Weaver ("Lieutenant Weaver") observed the Honda traveling westbound on I-20, near Minden, and stopped the vehicle. After apprehending the three occupants, Lieutenant *705 Weaver conducted a pat down and discovered that Defendant was female. A videotape of the stop was introduced into evidence at trial.
During a search, conducted pursuant to a search warrant, the following items were recovered from the Honda: a blue bag containing $25,869.25 (including the bait money), three BB guns[2] (one black and two silver, one of which was missing the slide), two bandanas, (one black, one blue), a black and gold folding knife, clothing matching the description of that worn (as described, supra) during the robbery and a Wal-Mart bag.
After a trial on the merits, a jury found Defendant guilty on three counts of armed robbery. The State withdrew its request for an enhanced sentence based upon the use of a firearm. The trial court then sentenced Defendant to serve three concurrent 20-year hard labor sentences, without benefits. Defendant appeals.

DISCUSSION

STANDARD OF REVIEW
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.3d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
Assignment of Error Number One (verbatim): The evidence was insufficient to support the verdict.
Defendant argues that the State failed to prove the last element of the crime of armed robberythat she was armed with a dangerous weapon. Defendant concedes that a toy gun has been held to be a dangerous weapon for purposes of an armed robbery conviction, but only if the jury reasonably finds that a "highly charged" atmosphere was created whereby there was a danger of serious injury resulting from the victim's fear for his life. The State argues, by way of contrast, that the facts developed at trial indicate that *706 both robbers were armed with a dangerous weapon. They argue that each perpetrator entered the bank with a gun and used it to intimidate the victims into surrendering their cash drawers.
Armed robbery is defined, under La. R.S. 14:64, as:
... the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
A dangerous weapon is defined, under La. R.S. 14:2(3) as:
... any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.
In State v. Woods, 494 So.2d 1258 (La.App. 2d Cir.1986), this court held that a BB or pellet gun can be considered a dangerous weapon. In Woods, the defendant argued that a BB gun did not meet the definition of a dangerous weapon because it was never drawn, there was no proof that it was loaded or workable and because it was not used in a manner likely to cause death or great bodily harm. In rejecting the defendant's contention, we stated:
It is clear that a loaded gun, pointed at a robbery victim, carries the inherent threat that death or great bodily harm is likely to result. However, the jurisprudence has also long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims and bystanders. The highly charged atmosphere of a pistol robbery is conducive to violence regardless of whether the pistol is loaded or workable because the danger created invites rescue and self-help. (Citations omitted.) Such a threat may exist even though the gun is not directly pointed at the victim. State v. Gould, 395 So.2d 647 (La.1980).
However, the Supreme Court has been careful to point out that the subjective reaction of the victim is not the sole determinative factor in evaluating whether an instrumentality has been used as a dangerous weapon. State v. Elam, 312 So.2d 318 (La.1975). The Court enunciated a standard in State v. Bonier, 367 So.2d 824 (La.1979) to determine whether a defendant has in fact used a dangerous weapon in the commission of an offense.
The Court pointed out that whether an instrumentality resembling a loaded firearm is a "dangerous weapon" is a factual issue to be decided within the immediate context of an armed robbery case. The trier of fact must first determine whether an inanimate instrumentality was used, and then whether in the manner actually used it was calculated or likely to produce death or great bodily harm. In making its determination, the trier of fact may find that there was an actual likely danger of serious bodily harm to anyone present in the highly charged atmosphere of the scene of a robbery, taking into consideration the great possibility of violence in the interaction between the offender and the victim thereby put in fear for his life. Here again, the court indicated that the subjective reaction of the victim is indicative but not the sole determinative factor in this evaluation. (Emphasis added.)
Defendant contends that brandishing a BB gun did not suffice to create the "charged atmosphere" necessary to support a finding that the gun was a "dangerous weapon" sufficient to support the verdict beyond a reasonable doubt. She notes *707 that the evidence in the case sub judice was that the two perpetrators were armed with BB pistols that merely appeared to be real and functioning firearms. She argues that the guns were not real; and, although the tellers were understandably alarmed, there was no evidence of any verbal threat of physical harm.
Defendant further states that this court can enter a conviction on a lesser and included offense when the evidence does not support a conviction of the crime charged, but supports a conviction on a lesser, included offense. Defendant argues that the facts in this case better support a verdict of first degree robbery. She requests that the verdict be set aside, that a verdict of guilty of first degree robbery be entered and that the case be remanded for sentencing accordingly.
The State argues, by way of contrast, that the atmosphere of an armed robbery is, by its very nature, "highly charged." The State further argues that the robbers came into the bank screaming, threatening, cursing and waving their guns. The State points out that the crime was committed during normal business hours when bystanders might come to the aid of the victims and further notes that Defendant did not object to the jury instructions given on this issue. The State concludes that the evidence, viewed in the light most favorable to the prosecution, supports the jury's reasonable conclusion that the BB guns were dangerous weapons, and Defendant's convictions should be upheld. We agree.
In State v. Jeselink, 35,189 (La.App.2d Cir.10/31/01), 799 So.2d 684, we discussed this issue, stating:
In State v. McClure, 34,880 (La.App.2d Cir.8/22/01), 793 So.2d 454, this court held:
Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. Hopkins, 96-1063 (La.App. 3d Cir.3/5/97), 692 So.2d 538; State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3); State v. Bonier, 367 So.2d 824 (La.1979).
....
Furthermore, the jurisprudence has long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims. State v. Woods, 494 So.2d 1258 (La.App. 2d Cir.1986). In State v. Leggett, 363 So.2d 434, 440 (La.1978), abrogated on different grounds as recognized in State v. Anderson, 603 So.2d 776 (La.App. 1st Cir.1992), the dangerous weapon test was met where the weapon used was an air pistol or pellet pistol which could possibly kill or cause great bodily harm. The Leggett court also noted that even an unloaded weapon could be used to strike a victim.
Similarly, we held, in State v. Kelly, 576 So.2d 111 (La.App. 2d Cir.1991), writ denied, 580 So.2d 666 (La.1991), that a BB gun is a dangerous weapon, i.e., an instrument which, in the manner used, is calculated or likely to produce death or great bodily harm.[3] This court held that the *708 manner in which the pellet gun was used, the jury could have reasonably concluded that the gun was a dangerous weapon.
Using the Jackson standard, supra, to review the evidence, we find that the State proved every element of the armed robbery charge beyond a reasonable doubt. The record indicates that Defendant was a principal in the taking of something of value (money) belonging to another (the bank) from the person of another or that is in the immediate control of another (the three victims), by use of force or intimidation (ordering, yelling and cursing), as prescribed by La. R.S. 14:24; 14:64.
The remaining element of this armed robbery  "while armed with a dangerous weapon"  again using the Jackson standard, supra, was also proved beyond a reasonable doubt. This court has repeatedly held that a BB gun is a dangerous weapon, i.e., an instrument "which, in the manner used, is calculated or likely to produce death or great bodily harm," as set out in La. R.S. 14:2(3). See Kelly, supra; Woods, supra.
Defendant perpetrated this crime in a bank, during business hours, creating a strong likelihood that bystanders might come to the aid of the tellers or attempt to thwart Defendant's escape, per Woods, supra. Furthermore, this was an armed robbery of a bank which, by its very nature, created a "highly charged" atmosphere regardless of whether the pistols were loaded or workable because the danger created invited rescue and self-help, again, per Woods, supra. Accordingly, we reject this assignment of error.
Assignment of Error Number Two (verbatim): The trial court imposed an excessive sentence.
Defendant next argues that her three 20-year sentences are excessive. She contends that the sentences were imposed vindictively because she opted to take the matter to trial, rather than accepting the State's offer of three 15-year sentences if she pled guilty on the morning of trial. Defendant states that the record does not indicate a justifiable reason for the increase of her sentence and that the sentence she received was twice the statutory minimum for armed robbery and a greater sentence than her co-defendant, the admitted "brain" behind the crime. Defendant requests that this court vacate her sentences and remand for imposition of a sentence that more accurately reflect the offense and offender.
The State argues, by way of contrast, that Defendant failed to timely file a motion to reconsider her sentence, and, therefore, is relegated to a claim that the sentence is constitutionally excessive. The State argues that the trial court particularized the sentence to Defendant and that it was not constitutionally excessive. The State also contends that Defendant's argument that the trial court was vindictive in its sentencing is misplaced and baseless. It points out that its recommendation of a 15-year sentence was conditioned on Defendant's agreement to cooperate with the State in the prosecution of her co-defendants.[4] Defendant rejected the State's aforementioned offer, even after being duly advised of a potential sentence of up to 99 years.
*709 Defendant was convicted of three counts of armed robbery. La. R.S. 14:64(B)[5] states, in pertinent part:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than 10 years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence.
When a defendant fails to file a motion to reconsider sentence under La. C. Cr. P. art. 881.1, the appellate court's review is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993); State v. Duncan, 30,453 (La.App.2d Cir.2/25/98), 707 So.2d 164. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. White, 37,815 (La.App.2d Cir.12/17/03), 862 So.2d 1123.
The record does not reflect that a timely motion to reconsider sentence was filed on Defendant's behalf; and, therefore, this court's review is limited to the bare claim that the sentence is constitutionally excessive, per Mims, supra, and Duncan, supra. A review of the entire record reveals that Defendant's sentences are neither grossly disproportionate to the severity of the crime, nor shocking to the sense of justice. Although a first-felony offender, the record indicates that Defendant willingly and aggressively participated in this armed robbery. Each of Defendant's three 20-year sentences is less than one-fourth the maximum possible sentence of 99 years. Accordingly, we find that Defendant's sentences were not constitutionally excessive; and, therefore, reject this claim.
We now turn to Defendant's assertion that her sentences were vindictive because she chose to go to trial rather than accept the State's plea offer. In State v. Fortino, 02-708 (La.App. 5th Cir.12/30/02), 837 So.2d 684, writ denied, 03-0251 (La.5/9/03), 843 So.2d 395, the Louisiana fifth circuit held that:
There is no evidence in the record, and the Defendant does not claim, that he was not free to accept or reject the State's plea offers. The Defendant simply chose not to accept them, thereby taking the risk of a greater penalty upon conviction by a jury. Additionally, the trial judge heard more details of the Defendant's actions during trial. His sentence was not, therefore, vindictive. See also, State v. Tyler, 01-1038 (La.App. 5th Cir.3/26/02), 815 So.2d 205.
Further, in Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the United States Supreme Court stated:
To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is "patently unconstitutional." But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecutor's offer....
While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of this trial rights, the imposition of these difficult choices [is] an inevitable"  and permissible  *710 "attribute of any legitimate system which tolerates and encourages the negotiation of pleas." It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty. [Citations omitted.]
The record in the case sub judice, as in Fortino, supra, lacks any evidence that Defendant was not free to accept or reject the State's plea offer. Here, Defendant neither alleges nor demonstrates that she was not free to accept any plea offers made by the State. Moreover, we do not find that the sentences imposed were vindictive. Defendant chose not to accept the State's offer, thereby taking the risk of a greater penalty upon conviction by a jury. Her sentences were not vindictive, as prescribed by Fortino, supra. Accordingly, we reject this assignment of error.
Assignment of Error Number Three (verbatim): Assigned as error are all errors patent.
Defendant's final assignment was a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. No errors patent were found.

CONCLUSION
For the reasons set forth herein, we respectfully find that the convictions and sentences of Defendant, April Shanay Lewis, are affirmed.
AFFIRMED.
NOTES
[1] The State's brief incorrectly states that the first robber was wearing a dark shirt and the second robber was wearing a white shirt. It also incorrectly relates the testimony of co-perpetrator Jones that he was wearing a dark shirt. Jones testified at trial that he was wearing black slacks, a light shirt and a blue bandana. Jones later clarified at trial that he wore black slacks, a white T-shirt and bandana.
[2] The record indicates that two of the three BB guns were not in working order. Jones testified that he used Wallace's gun, which was missing the slide, during the robbery. He acknowledged on cross-examination that his gun was also in the back of the car prior to the robbery and that it was not in working order. No statement was made regarding the working order of the third gun found in the car.
[3] The trial court relied on La. R.S. 14:2(3) and cited to State v. Woods, supra, in making its ruling.
[4] The State also notes that the trial revealed several facts that were unknown prior to trial. This included, but was not limited to, the testimony of all three victims and the victim impact statement that was part of the pre-sentence investigation ("PSI") report greatly expanded the trial court's knowledge and justified the greater sentence.
[5] We note that, had Defendant been convicted of violations of La. R.S. 14:64, Armed robbery, and 14:64.3, Armed robbery... use of a firearm, the statutory minimum sentence would have been 15 years because a firearm was used in the commission of the robbery.