STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**13-80**


**STATE OF LOUISIANA**

**VERSUS**

**DANA BOWLES**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 308,903
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**

**James C. Downs**
**District Attorney**
**Michael W. Shannon**
**Assistant District Attorney**
**Post Office Box 1472**
**Alexandria, Louisiana  71309**
**(318) 473-6650**
**Counsel for Appellee:**
        **State of Louisiana**

**Brent A. Hawkins**
**Louisiana Appellate Project**
**Post Office Box 3752**
**Lake Charles, Louisiana  70602**
**(337) 502-5146**
**Counsel for Defendant/Appellant:**
     **Dana Bowles**

**Dana Bowles**
**In Proper Person**
**WNC Dogwood C2**
**Post Office Box 1260**
**Winnfield, Louisiana  71483**
**Defendant**

**KEATY, Judge.**

Defendant, Dana Bowles, appeals his convictions of armed robbery and second degree kidnapping. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

On July 20, 2011, Dana Fletcher (Fletcher) was shopping at Old Navy. After she exited the store and got into her car, Defendant placed his arm around her neck and shoved a gun into the back of her neck. Defendant told her to shut the door and demanded money and jewelry. Fletcher advised that she was not wearing jewelry nor did she have any cash although she possessed a debit card. Defendant then ordered her to find a bank. At the bank, Defendant demanded Fletcher withdraw five hundred dollars from the ATM, which she did. He then told her to withdraw more, but the withdrawal request was denied. Defendant then directed her to a location a few miles away. As Defendant exited Fletcher's vehicle, he grabbed Fletcher's purse which contained her cell phone, wallet, credit cards, and other valuables.

On July 21, 2011, Defendant also robbed Brenda Jones Johnson (Jones)[1] at gun point in a bank parking lot.

Defendant was subsequently charged with two counts of armed robbery, a violation of La.R.S. 14:64, and one count of second degree kidnapping, a violation of La.R.S. 14:44.1. The offenses involved two different victims on two different dates. A jury trial thereafter found Defendant guilty as charged. He was sentenced to fifteen years imprisonment without the benefit of parole, probation, or suspension of sentence on each count of armed robbery and ten years on the

---

[1] The victim's full name is Brenda Jones Johnson. We note that in the trial court transcript, she is referred to as Ms. Jones. Thus, we will refer to her as Jones, and not Johnson, throughout this opinion.

second degree kidnapping conviction, with the first two years to be served without the benefit of parole, probation, or suspension of sentence. All the sentences were ordered to be served consecutively for a total of forty years imprisonment. Defendant now appeals.

## DISCUSSION

On appeal, Defendant asserts two assignments of error: (1) Defendant's convictions for both the armed robbery and the second degree kidnapping of Fletcher violated his constitutional protection against double jeopardy because the armed robbery was the underlying felony and an essential element of the second degree kidnapping and (2) the sentence imposed for count one of the armed robbery of Jones should be vacated as excessive because the trial court failed to impose a sentence individualized to Defendant for that offense.[2] Defendant further asserts one pro se assignment of error, contending that the identification procedure provided to Jones was suggestive such that there was a substantial likelihood of misidentification.

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there are no errors patent.

### *Assignment of Error Number One*

Defendant argues that the convictions for armed robbery and second degree kidnapping of Fletcher violated his constitutional protection against double jeopardy because the armed robbery was the underlying felony and an essential element of the second degree kidnapping.

---

[2] Defendant does not contest the conviction for armed robbery of Jones.

This court examined double jeopardy in *State v. Cogswell*, 05-510, pp. 3-4 (La.App. 3 Cir. 12/30/05), 918 So.2d 590, 593-94, *writ denied*, 06-314 (La. 9/1/06), 936 So.2d 196 (quoting *State v. Vaughn*, 431 So.2d 763 (La.1983)), as follows:

> In *State v. Knowles*, 392 So.2d 651, 654 (La.1980), the Court citing *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), outlined the following criteria for examining violations of double jeopardy:
>
> > ". . . The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not . . ."
>
> This rule is constitutionally required by the States. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), and is embodied in La.C.Cr.P. 596:
>
> > "Double jeopardy exists in a second trial only when the charge in that trial is: (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or (2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
>
> Louisiana uses both the "*Blockburger* test" and the "same evidence test". *State v. Steele*, 387 So.2d 1175 (La.1980); *State v. Doughty*, 379 So.2d 1088 (La.1980); *State v. Didier*, 262 La. 364, 263 So.2d 322 (1972) and *State v. Hayes*, 412 So.2d 1323 (La.1982). When a defendant is charged with separate statutory crimes they need not be identical in elements or in actual proof to be the same within the meaning of the constitutional prohibition. *State v. Hayes*, 412 So.2d at 1325.
>
> The Louisiana Supreme Court explains the "same evidence" test in *State v. Steele*, 387 So.2d 1175, (La.1980) as follows:
>
> > "If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced

at trial . . . The 'same evidence' test is somewhat broader in concept than *Blockburger* the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct." *Id*. at 1177.

Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. *State v. Steele*, *supra*; *State v. Hayes*, *supra*; *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931); *Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715 (1980).

In the present case, Defendant was charged in the bill of information, as follows:

COUNT 2:
IN THAT HE DID ON OR ABOUT THE 20th DAY OF JULY, 2011 while armed with a dangerous weapon rob D.F., in violation of LSA-R.S. 14:64;

COUNT 3:
IN THAT HE DID ON OR ABOUT THE 20th DAY OF JULY, 2011 committed second degree kidnapping of D.F., in violation of LSA-R.S. 14:44.1 A(2)B(1)[.]

Louisiana Revised Statutes 14:64(A) provides that armed robbery is the "taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."

Louisiana Revised Statutes 14:44.1(A)(2) and (B)(1) further provide:

A.   Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:

. . . .

(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;

. . . .

B.   For purpose of this Section, kidnapping is:

4

(1) The forcible seizing and carrying of any person from one place to another . . . .

Based on the above jurisprudence and statutory law, we agree with Defendant in that the armed robbery was the underlying felony and an essential element of second degree kidnapping. Pursuant to La.R.S. 14:44.1(A)(1), the felony being facilitated by the kidnapping was the armed robbery. The second degree kidnapping occurred when Defendant, utilizing his gun, forced Fletcher to drive him to a bank to withdraw money from her account. A "taking" for purposes of armed robbery occurred at the bank when Defendant used a gun to force Fletcher to withdraw money at the bank. However, we disagree with Defendant with respect to double jeopardy as there was more than one taking.

As the State correctly points out, there was more than one "taking." The State argues:

> Therefore, Appellant's assertion at page 6 of his brief that "other than the armed robbery of Mrs. Fletcher, the State offered no evidence that any other felony was committed during the second degree kidnaping." This statement disregards the facts and the evidence that shows that there were two separate "takings" of property by use of force or intimidation from the victim and a separate attempted "taking" when the Appellant demanded that the victim attempt to withdraw more money from the ATM. The Appellant, during this crime, forced the victim to withdraw five hundred ($500.00) dollars from the ATM while he was armed. He then forced the victim to attempt to withdraw more money from the ATM. Then, sometime later, he forced the victim to drive from one place to another and took from the victim her designer purse along with all of her personal property in the purse, a separate and distinct robbery.

We further note that Louisiana does not follow the "'same transaction' test which would prohibit prosecutions for different crimes committed during one sequential, continuing course of conduct." *State v. Letell*, 12-180, pp. 7-8 (La.App. 1 Cir. 10/25/12), 103 So.3d 1129, 1137, *writ denied*, 12-2533 (La. 4/26/13), 112

5

So.3d 838. Importantly, in Louisiana, double jeopardy fails to protect an offender who violates numerous statutory provisions on a crime spree. *Id.*

In the present case, Fletcher testified that after she withdrew money from the ATM, Defendant was still sitting behind her with his arm around her neck. Defendant subsequently directed her to a different location to what she thought was an abandoned house. She heard a noise and testified that "[i]t sounded like a gun that when you spin it, and so, I thought to myself, he's going to kill me right here." Fletcher further testified that Defendant subsequently grabbed her purse, exited the vehicle, and ran away.

We find that Defendant's act of running away with Fletcher's purse while armed with a gun constitutes a second "taking" as it occurred in a different location other than at the bank. This "taking" constitutes the separate and distinct crime of armed robbery. Thus, there is no merit to this assignment of error

### *Assignment of Error Number Two*

Defendant argues that the sentence imposed for count one of the armed robbery of Jones should be vacated as excessive since the trial court did not individualize the sentence for that offense.

The offense of armed robbery carries a mandatory sentence of "not less than ten years and for not more than ninety-nine years, without the benefit of parole, probation, or suspension of sentence." La.R.S. 14:64(B). Defendant received fifteen years at hard labor for the offense.

We note that following the sentencing hearing, Defendant made an oral objection to the sentence as being excessive. Defendant did not indicate, however, whether he was objecting to the one fifteen-year sentence or the consecutiveness of the sentences, nor did he indicate why the sentence or sentences were excessive.

Defendant did not file a written motion for reconsideration of the sentence in violation of La.Code Crim.P. art. 881.1(E), which provides:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356, the defendant failed to object to the sentence imposed at the sentencing hearing and did not timely file a motion to reconsider sentence. Thus, this court found his claim of excessiveness of sentence was barred.

Based on the above statutory law and jurisprudence, Defendant is precluded from a review of the excessiveness of the sentences. We are mindful, however, that this court has reviewed claims of excessiveness where no objection was made, no motion to reconsider sentence filed, or at a minimum, Defendant only objected to the excessiveness without stating a ground for his objection. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, __ U.S. __, 131 S.Ct. 932 (2011); *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127. Accordingly, we will review the Defendant's claim as a bare claim of excessiveness.

This court discussed the standard of review applicable to claims of excessiveness in *State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59, as follows:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v. Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest

abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in [*State v.*] *Lisotta*, [98-648 (La.App. 5 Cir. 12/16/98),] 726 So.2d [57,] 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

With respect to the first factor, Jones testified that Defendant approached her in a bank parking lot after she deposited her paycheck. He threatened her with a gun and demanded money. When Jones said she did not have any money on her person, Defendant took her cell phone and fled.

With respect to the second factor, at the sentencing hearing, the trial court questioned Defendant extensively regarding his personal history. He was twenty-six at the time of sentencing. The trial court noted a criminal history which included possession of controlled dangerous substances, theft, simple burglary, criminal damage to property, and contempt of court charges for non-support of two minor children. The trial court further discussed the brutality of Defendant's actions regarding Fletcher. Fletcher had submitted a lengthy impact statement detailing the terror she felt during the robbery and how difficult it was to cope afterwards. Jones chose not to make any statement to the trial court.

With respect to the third factor, in *State v. Lewis*, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702, the defendant was a first felony offender and received three concurrent twenty-year sentences for the armed robbery of three employees at a bank. The defendant was armed with a BB gun. In *State v. Roddy*, 33,112 (La.App. 2 Cir. 4/7/00), 756 So.2d 1272, *writ denied*, 00-1427 (La. 5/11/01), 791 So.2d 1288, a twenty-two-year-old first felony offender defendant received a twenty-year sentence for armed robbery of a bank. The defendant was a passenger in the getaway car but was aware of the plan to rob the bank. The presentence report noted the defendant had spent eight months in a juvenile detention center for a prior adjudication for armed robbery. In *State v. Square*, 433 So.2d 104 (La.1983), the supreme court upheld the defendant's twenty-five-year sentence for a bank robbery. The defendant was twenty-two years old, was gainfully employed, lacked a prior criminal record, and there was no injury to the victims of the robbery. In *State v. Smith*, 01-2574, p. 7 (La. 1/14/03), 839 So.2d 1, 4, the supreme court stated that sentences of thirty-five to fifty years have been found to be "acceptable for first offenders convicted of armed robbery."

Based upon the nature of the crime, the nature and background of Defendant, and the sentence imposed for similar crimes by the same court and other courts, we find that Defendant's sentence was not excessive. While the trial court did not specifically mention Jones' name when he sentenced Defendant to fifteen years on each conviction for armed robbery and considering that Defendant was on a two-day crime spree, the trial court did not abuse its considerable discretion when it sentenced Defendant to fifteen years for the armed robbery of Jones. Accordingly, Defendant's assignment of error lacks merit.

## Pro Se Assignment of Error

Defendant argues that Jones' identification of him as the robber from a photographic lineup was unduly suggestive; therefore, there was a strong likelihood of misidentification. Jones was presented with two six-person photographic lineups six days following the robbery. She did not identify anyone from these two lineups. The next day, however, she was provided with a third photographic lineup, and she identified Defendant as the man who robbed her at gunpoint. While Defendant never explains in what way the viewing of the photographs was suggestive, he argues that Jones could not have had a good enough look at the robber in order to identify him.

In *State v. Thomas*, 04-1341, 04-1342, p. 7 (La.App. 5 Cir. 5/31/05), 904 So.2d 896, 901-02, *writ denied*, 05-2002 (La. 2/17/06), 924 So.2d 1013, the fifth circuit stated:

> Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 113-114, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. *Id*.

Considering the factors of reliability as cited in *Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, Jones testified at trial regarding her observation of the robber. Jones testified that the robbery occurred at the Chase bank ATM which was located in front of Target. While Jones was waiting for the woman in front of her at the ATM machine to finish her transaction, she noticed a man milling around the

parking lot. After the customer ahead of her left, she walked up to the ATM and conducted her transaction. After Jones finished her transaction and walked back to her car, Defendant walked out from the side of the building and approached her. Defendant came within approximately two feet of Jones when she "looked at him in the face" and the two made eye contact. Jones testified that they were located in a well-lit area. Nevertheless, Defendant subsequently placed his hand into his pocket and retrieved a gun. Jones began begging for her life and backing up. Defendant told her to stop backing up, and Jones testified that "we was [sic] standing there facing each other. Uh he never -- the gun was on his side at that point. So, I wanted to make eye contact with him to plead for my life because I was hoping he could see that I was scared."

A few days later, Jones testified that Detective Foshee showed her two photographic lineups of six pictures each, i.e., twelve pictures total. Jones testified that Detective Foshee never suggested that she pick any certain individual from the two lineups. Jones was unable to identify her robber from this first or second lineup. A few days later, Detective Foshee showed her six more pictures. Jones again testified that Detective Foshee never suggested that she pick any certain individual from this third lineup. Nevertheless, she was able to identify Defendant as her robber. At trial, Jones was asked how sure she was that the photograph was of the man who robbed her. She replied:

> Absolutely sure. I was very much sure because of the fact he was trying to stay out of the camera, and I - - he - - what, what happened, he was right there under the light, and by me being a couple of feet from him, I actually stood face to face with him.

Of the above *Brathwaite* factors listed, there was no discussion regarding identifying features such as scars, hair style, or clothing. Furthermore, at one point,

11

Jones admitted she initially told Detective Foshee who showed her the final set of pictures that she was ninety percent certain the man she indicated was the robber. However, she explained that after seeing Defendant in the courtroom that she was absolutely certain he was the robber. Jones testified that she "wanted to be able to look at him and make him have sympathy for me. I had fear for my life. So, I actually looked at him and I know that that was him."

Based on the above testimony, Defendant fails to show that the viewing procedure of the three sets of photographs to Jones was suggestive. Defendant also fails to show that Jones' identification of him was unreliable. Accordingly, there is no merit to this assignment of error.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED.**