|, GAUDIN, Judge.
Carlo J. DeSalvo was convicted in the 24th Judicial District Court of five separate crimes and sentenced to life imprisonment as a fourth felony offender. We affirm the convictions and the finding that DeSalvo was a fourth felony offender. We vacate his sentence and remand for re-sentencing.
DeSalvo was charged in the Bill of Information as follows:
Count one — attempted second degree murder of Todd Louque,
Count two — armed robbery of Louque,
Count three — attempted second degree murder of James Clair,
Count four — second degree kidnaping of Clair, and
Count five — armed robbery of Clair.
In a bench trial on July 14-15,1997, DeSal-vo was found guilty as charged regarding counts two, four and five. He was also found guilty of aggravated battery, responsive to attempted second degree murder, in counts one and three, and sentenced to eight years at hard labor for each of these counts. The sentences for counts two, four and five were 25 years feeach. The sentences were to run concurrent.
On appeal, DeSalvo argues (1) that the guilty verdicts were contrary to the law and evidence and (2) that the state did not prove that he was a fourth felony offender.
DeSalvo submits two primary arguments. In the robbery of Louque, there was no weapon; thus, the crime committed was simple not armed robbery. In the robbery of Clair, DeSalvo says he wasn’t there.
LOUQUE ROBBERY
At approximately 7p.m. on the evening of June 28, 1995, Louque went to Vinnie’s Sports Bar in Marrero, Louisiana. While there, he drank several beers and met Lila Plaisance, who introduced herself as “Cheyenne” and who, sometime later, asked Lou-que to drive her home. He agreed.
*940 Instead of going directly to Plaisance’s residence, they stopped at a convenience store for beer and then Louque drove to a place called the Harvey Locks, an area along the Mississippi River. Plaisance had planned in advance with DeSalvo and her boyfriend, Robert Guccione, whereby Plaisance was to lure a “mark” to an isolated spot where DeSalvo and Guccione could pounce on and rob the unsuspecting victim.
Once at the Harvey Locks, Louque and Plaisance sat against a wall and started drinking beer. Minutes later Louque was physically attacked by a large man, later identified by Louque as Guccione, who was accompanied by a smaller man, later identified by Louque as DeSalvo.
_|Louque defended himself. He and Guc-cione rolled down an embankment into the river, where they continued to fight in water three feet deep. Guccione held Louque’s head under water several times.
At one point, DeSalvo pointed a handgun at Louque and shouted, “Stop or we’ll kill you, we’ll kill you right now.” Louque put up his hands and said he would stop resisting. Louque, as ordered, surrendered his wallet, pager, car keys and wrist watch. DeSalvo, Guccione and Plaisance then fled. Louque suffered a serious cut over his left eye which required medical attention at West Jefferson Hospital.
DeSalvo admitted his part in the plot to rob Louque but he denied having or pointing a pistol at Louque.
CLAIR ROBBERY
On June 30, 1995, two nights after the Louque robbery, 68-year-old James Clair went to a lounge on the east bank of Jefferson Parish at 10 p.m., where he met Plai-sance, who said her name was “Cheyenne” and who asked Clair about an hour later to drive her to her sister’s nearby house. Clair said okay. Plaisance told Clair to meet her outside the lounge.
Clair walked to his automobile, which was parked close to the lounge’s entrance. As he unlocked the door, a man later identified by Clair as Guccione, who had been lying in wait, grabbed Clair from behind and forced him to the rear of the car and into the trunk. Guccione and another man, later identified by Clair as DeSalvo, then got into Clair’s auto and drove off.
kThe car stopped a short distance away. Guccione opened the trunk and bound Clair’s hands and feet with tape. He then closed the trunk and began driving again. Clair was able to free himself. When the car stopped again, Guccione opened the car’s trunk and became enraged when he saw that Clair had removed the tape. He grabbed a can of tire inflator away from Clair and closed the trunk.
A few minutes later, Guccione opened the trunk again. Clair attempted to escape but Guccione kicked him and beat him with the tire inflator can. Clair testified that he saw DeSalvo standing behind Guccione. After beating Clair, Guccione closed the car’s trunk. During the course of the next four to five hours, Guccione periodically opened the trunk, beat and kicked Clair, and closed the truck. Each time the trunk was opened, Clair could see DeSalvo there.
Clair eventually lost consciousness. He awoke the next morning still in the car’s truck. The auto had been abandoned on Terry Parkway in Terrytown. Clair heard voices outside and he shouted for help. Several garbage collectors heard Clair and they were able to free Clair after an hour. Clair’s injuries included cuts to the face which required 350 stitches, a dislocated elbow and two broken ribs. Some of the gashes on his face were so deep that bone was exposed. One of his ears was nearly detached, and he nearly lost the use of his right eye.
Lt. Maggie Snow testified that she met with Clair at the hospital and ^showed him three photographic lineups. He was able to positively identify Plaisance from one of those lineups, but could not identify anyone in either of the two male lineups. Clair told her he would recognize the two male perpetrators if he saw them in an actual lineup. Clair later identified DeSalvo in a physical lineup and he also made a positive identification at trial.
DeSalvo was arrested at the Marrero home of his sister, Yvette Campbell. After *941 DeSalvo had been taken into custody, his girlfriend, Vicky Trosclair, informed Lt. Snow of DeSalvo’s participation in the incident at the Harvey Locks. Trosclair then spoke with DeSalvo and convinced him to make his own statement to Lt. Snow, during which he admitted to having participated with Guccione and Plaisance in the robbery of Louque but he denied having used a gun. DeSalvo said that he had nothing to do with the robbery and beating of Clair.
After the Louque attack, DeSalvo stated that Plaisance and Guccione asked him to help out in another robbery but DeSalvo said he declined.
Both Plaisance and Guccione were convicted for their participation in the Louque and Clair incidents and both are serving time.
ASSIGNMENT NO. 1
DeSalvo contends that the evidence at trial was insufficient under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standards to show that a handgun was involved in the robbery of Louque. No pistol was ever found. Further, DeSalvo argues in his brief that no gun was mentioned by Lou-que in bthe initial police report made while Louque was at the hospital. Deputy Mike Burgess met Louque at the hospital. The officer described Louque as follows:
“He was in and out of the emergency room, he was waiting to see a doctor. Physically, he couldn’t stand up, he was weak. His left eye had a cut over it approximately two inches or so long and it was bleeding over his face to where he couldn’t even open his eye to see me. They had not even cleaned him up yet to go into preparatory for his visit with the doctor, in emergency.”
The deputy testified that he did speak with Louque and that he (Louque) told him that “ a hand gun” had been involved in the attack on him by two males and that that fact was included in section 33 of the police report. The report, however, does not indicate which of the two robbers had the pistol. Burgees said that was “an oversight” on his part and that “you’d have to ask the victim” who had the hand gun.. Louque said it was DeSalvo.
The second argument DeSalvo makes under this assignment of error is that the state did not prove beyond a reasonable doubt that he was present when Clair was apprehended, beaten and robbed. Clair testified that he was able to see DeSalvo during the periods of time when the trank was open. He later identified DeSalvo during a physical lineup and he said at trial that he was certain DeSalvo was one of his assailants.
^DeSalvo produced two women, his girlfriend and sister, as alibi witnesses. They said that they were with DeSalvo at his sister Yvette Campbell’s house the evening of June 30,1995, when Clair was assaulted.
When viewed in the light most favorable to the prosecution, as required by Jackson v. Virginia, supra, the evidence was sufficient for the trial judge to conclude that DeSalvo held a pistol on Louque and that he (DeSalvo) was with Guccione and not at his sister’s residence when Clair was attacked. From the trial judge’s viewpoint, Louque and Clair were more reliable witnesses than DeS-alvo, who has an extensive record of felony arrests and convictions, and his alibi witnesses, one of whom (Trosclair) was a drug addict according to DeSalvo.
In any event, it is not an appellate court’s function to assess the credibility of witnesses or to reevaluate evidence to overcome a fact-finder’s determination of guilt. See State v. Girod, 703 So.2d 771 (La.App. 5 Cir.1997), and many other cases with similar holdings.
The two arguments made under this assignment of error are without merit considering the positive testimony of Louque and Clair, which obviously the trial judge believed, and other aspects of this case.
ASSIGNMENT NO. 2
Here, DeSalvo contends that the state failed to prove the necessary elements at the multiple offender hearing. First, he argues that his prior convictions, all involving guilty pleas, were not based on knowing and ^voluntary waivers of constitutional rights. Also, he maintains that the prosecution did *942 not prove that he was the same person who committed the predicate crimes.
At the multiple offender hearing, the state presented evidence of the following prior felony convictions: (1) Case Number 83-0198, 24 th Judicial District Court, two counts of simple burglary; (2) Case Number 5-91-1041, 19th Judicial District Court, one count of theft over $100 but less that $500; (3) Case Number 89-98, 21st Judicial District Court, one count of simple burglary; and (4) Case Number 61468, 21st Judicial District Court, one count of possession of stolen things having a value of over $500.
In response to the multiple offender bill, DeSalvo failed to object in written form as mandated by LSA-R.S. 15:529.1 D(l)(b). The only objection orally made by defense counsel at the multiple offender hearing was to the 1983 convictions in case No. 83-0198 because the state’s evidence did not contain a “colloquy” between DeSalvo and the sentencing judge.
DeSalvo himself voiced a general objection to all of the presented evidence produced by the state but he stated no specific repudiation.
Regarding case No. 83-0198, the state offered Exhibit 4, in globo, as proof of DeSalvo’s convictions for simple burglary. That exhibit included a certified copy of a minute entry which states that DeSalvo was represented by counsel, that he was advised of his right against self-incrimination and of bhis rights to trial by jury and confrontation, and that he waived these rights. The exhibit also contains a waiver of rights form signed by DeSalvo and his attorney, which contains an explanation of constitutional rights. The burden then shifted to DeSalvo to show an infringement of his rights or a procedural irregularity in the taking of the plea. See State v. Conrad, 646 So.2d 1062 (La.App. 5 Cir.1994), writs denied at 652 So.2d 1345 (La.1995), which states at page 1064:
“If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a “perfect” transcript of the Boykin colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an ‘imperfect’ transcript. If anything less than a ‘perfect’ transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary.”
DeSalvo produced no affirmative proof of any nature; consequently, the burden of producing a ‘perfect’ transcript did not shift back to the state.
At the multiple bill hearing, the state called Dwayne Freeman of the Louisiana Department of Corrections, who said he supervised DeSalvo’s parole after each of the convictions alleged in the multiple offender Bill of Information. Freeman identified DeSalvo in court and produced a photograph hoof DeSalvo, which Freeman maintained in his files. This testimony was sufficient to prove identity.
Even if DeSalvo had filed a written objection to the multiple bill, he did not produce any affirmative evidence showing an infringement of a constitutional right or any procedural irregularity in the taking of the plea in case No. 83 — 0198 or in any of the other cases itemized in the multiple offender bill. This assignment of error is without substance.
ERRORS PATENT
We found several errors patent requiring a remand for re-sentencing.
When DeSalvo was sentenced as a multiple offender under LSA-R.S. 15:529.1, he (the trial judge) stated that the minimum possible sentence was life imprisonment. However, *943 as none of the felonies listed in the multiple bill was a crime of violence, DeSalvo should have been sentenced under the provisions of 15:529.1 A(l)(e)(i), in effect when the June, 1995 crimes were committed and which provides for a sentence of no less than 20 years and not more than life. While a life sentence was within the permitted latitude, it was not mandatory.
Also, the trial judge said, according to the transcript, that he was vacating the previously given sentence of 25 years in case No. 95-4348. There appears to be some confusion here as 95-4348 was dismissed by the state.
In any event, a remand for resentencing is appropriate. The state doesjunot again have to show that DeSalvo is a multiple offender.
CONVICTIONS AND FINDING THAT DEFENDANT IS A MULTIPLE OFFENDER ARE AFFIRMED; REMANDED FOR RESENTENCING.