STEPHEN J. WINDHORST, Judge.
| «Defendant, Melvin R. Phillips, was convicted of one count of armed robbery in violation of La. R.S. 14:64, and one count of attempted armed robbery in violation of La. R.S. 14:27:64. Defendant was sentenced to 50 years at hard labor on count one, and 24 years at hard labor on count two, to be served consecutively, without benefit of probation, parole, or suspension of sentence. After adjudication of defendant as a second felony offender, the trial court vacated defendant’s sentences and resentenced him to 75 years at hard labor on count one and 50 years at hard labor on count two, to be served consecutively without benefit of probation, parole or suspension of sentence. This appeal followed.
FACTS
At trial, the following was presented. On September 3, 2011, at approximately *419 1:00 a.m., Carlos Sosa was working at the Shell gas station on West Esplanade and Williams Boulevard when a man walked in and demanded money. Upon demanding the money, the man raised his t-shirt and displayed the handle of a gun he had secured in his belt. The man kept his hand on the gun for the duration of the robbery. Mr. Sosa complied with the man’s demands and gave him the money from the register, testifying that he was “nervous” and that he didn’t “play around.” Wanting more money, the man then told Mr. Sosa to open the safe and lift the drawer from the register. Mr. Sosa told him that he could not open the safe Land that there was no more money underneath the register drawer, so the man grabbed the money and left. Before leaving, the man instructed Mr. Sosa to stay inside. When the man left, Mr. Sosa called the police and described the man as wearing an army hat, fatigue jacket, white t-shirt, shorts, and tennis shoes.
The robbery was captured on the store’s surveillance cameras. A few days later, Mr. Sosa identified defendant from a photographic lineup as the man who robbed him.
On the same night, approximately at 4:45 a.m., Kenneth Klein was working at the Exxon gas station located at the corner of David Drive and Airline Highway when a man wearing a white t-shirt and camouflage pants entered the store, took out his wallet, and asked for a pack of cigarettes. After retrieving a pack of Kools cigarettes for the man, the man said to Mr. Klein “I’ll take the Kools and everything in the register, or I’ll blow your f* * *ing head off.” The man then displayed a gun which was underneath his shirt. Mr. Klein testified that the man put his hand on the grip of the gun, and that when he did this, he could see the'grip, the trigger guard, the hammer, and a portion of the barrel.[1]
Mr. Klein complied with the man’s demand and placed the money from the cash register on the counter. The man also demanded the money that was underneath the drawer of the register, but when Mr. Klein told him there was no more money the man stated “don’t look at me or I’ll blow your f* * *ing head off.” Mr. Klein testified that at this point he was “very concerned” and “scared” because he believed the man would follow through with his threats. Upon noticing that the man had taken his hand off his gun to reach for the money, Mr. Klein took the opportunity to take out the pistol he had in his front pocket and shoot the man |stwice. Mr. Klein testified that after he shot him the first time it looked as if the man was trying to reach for his gun, so he fired a second shot.
The man ran from the store and Mr. Klein followed him outside to obtain his license plate number. When he exited the store, it appeared to Mr. Klein that the man was getting out of his car. Believing that the man may decide to start shooting, Mr. Klein fired one more shot into the man’s car door in an attempt to keep the man inside his car, and to “mark the car so it would be identifiable.” The man drove away and Mr. Klein called the police to report the incident. Mr. Klein identified defendant in open court as the man who robbed him.
Detective David Canas of the Jefferson Parish Sheriffs Department investigated the armed robbery of Mr. Klein. Upon arrival at the scene, Detective Canas processed the wallet that defendant had inad *420 vertently left on the store counter. The wallet contained defendant’s social security card, his driver’s license, and other various cards containing his name.
Shortly after the Exxon robbery, Detective Randy Thibodeaux of the Jefferson Parish Sheriffs Office was called to the scene of a one car accident at 819 David Drive. The driver of the vehicle, later identified as defendant, had been shot and was transported from the scene to University Hospital by EMS. A bullet hole was observed on the driver’s side of his vehicle. A BB gun was removed from the front seat of the vehicle. Officers also recovered defendant’s VISA card, cell phone, a hat, and camouflage shorts from inside the vehicle. The clothing and hat recovered from defendant’s vehicle matched the description of the man as seen on the Shell station robbery video.
Detective Canas and Sergeant McGre-gor interviewed defendant after he was released from the hospital. During the interview, defendant stated that he went to the Exxon gas station to buy cigarettes and the clerk “shot him for no reason.” He |fifurther stated that the gun found in his vehicle belonged to his nephew. Defendant also denied being involved in the Shell station robbery.
SUFFICIENCY OF EVIDENCE and JURY INSTRUCTION
In his first counseled assignment of error, defendant alleges that the trial court erred in instructing the jury that a toy gun could be a dangerous weapon, and therefore the evidence was only sufficient to prove first degree robbery. In his third pro se assignment of error, the defendant alleges that the evidence was insufficient to prove armed robbery.
As in this case, when the issues on appeal relate to both sufficiency of the evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992).
On appeal, defendant only challenges the sufficiency of the evidence as it relates to his conviction for the armed robbery of Mr. Sosa. Specifically, he contends that the State failed to prove he was armed with a dangerous weapon.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cerit. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). A reviewing court is required to consider the whole record and determine whether a rational trier of fact could have found defendant guilty beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184. Both the direct and circumstantial evidence 17must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends *421 to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court . must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another by use of force- or’ intimidation while armed with a dangerous weapon. La. R.S. 14:64; State v. Wade, 10-997 (La. App. 5 Cir. 8/30/11), 77 So.3d 275, 279. In the instant matter, defendant’s sufficiency argument centers on whether the BB gun used by defendant could be considered a dangerous weapon under the circüm-stances of this case. Specifically, defendant argues that the BB gun was not used in a manner calculated or likely to produce death or great bodily harm.
La. R.S. 14:2(A)(3) defines a “dangerous weapon” as “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” No weapon need ever be seen by | Rthe victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that the defendant was armed with a dangerous weapon. State v. Page, 02-689 (La.App. 5 Cir. 1/28/03), 837 So.2d 165, 176, unit denied, 03-0951 (La.11/7/03), 857 So.2d 517.
Louisiana courts have previously found many and varied objects to be dangerous weapons for purposes of La. R.S. 14:64. These objects have included an ink pen; a liquor bottle hidden in a .pocket; a metal sign post; a hammer; and a toy gun. State v. Davis, 07-544 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 71-72, writ denied, 08-0380 (La.9/19/08), 992 So.2d 952. In State v. Leggett, 363 So.2d 434 (La.1978), the dangerous weapon test was met where the weapon used was an “air pistol or pellet pistol” which could possibly kill or cause great bodily harm.
When an inherently harmless instrumentality has been used to commit an armed robbery, the jury must find “that there was an actual likely danger of serious bodily harm to anyone present in the highly charged atmosphere of the scene of a robbery, taking into consideration the great possibility of violence in the interaction between the offender and the victim thereby put in fear of his life.” Davis, supra. “[T]he Supreme Court has been careful to point out that the subjective reaction of the victim is not the sole determinative factor in evaluating'whether an instrumentality has been used as a dangerous weapon.” State v. Lewis, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702, 706.
This Court has recognized that a toy gun has been held to be a dangerous weapon for purposes of an armed robbery conviction if the jury finds that “the interaction between the offender and the victim created a highly charged atmosphere” where there was a danger of serious bodily harm resulting from the victim’s fear for his life. State v. Washington, 00-1312 (La. App. 5 Cir. 5/16/01), 788 So.2d 596, 601, unit denied, 01-1718 (La.5/3/02), 815 So.2d 94.
9Also, in State v. Lewis, supra at 706, the Louisiana Second Circuit Court of Appeal recognized that jurisprudence has:
... long held that unworkable or unloaded guns can constitute dangerous *422 weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims and bystanders. The highly charged atmosphere of a pistol robbery is conducive to violence regardless of whether the pistol is loaded or workable because the danger created invites rescue and self-help.
Considering the foregoing, we find that the BB gun used by defendant to rob Mr. Sosa constitutes a dangerous weapon, which in the manner used, was “calculated or likely to produce death or great bodily harm.” When defendant showed his weapon and demanded the money from the register, defendant used the BB gun in a manner that led Mr. Sosa to believe it was real. Mr. Sosa was “nervous” when faced with what he believed to be a real gun and so complied with all of defendant’s demands. The interaction between defendant and Mr. Sosa created a highly charged atmosphere where any witness to the robbery upon observing the life threatening situation could have attempted to disarm defendant — by the use of a gun or other weapon — and during such an altercation, death or great bodily harm to the victim, defendant, or witness could have occurred. Thus, the manner in which defendant used the BB gun and the effect it had on Mr. Sosa provided sufficient evidence under Jackson v. Virginia for a jury to find the BB gun to be a dangerous weapon -within the provision of La. R.S. 14:64.
Defendant also argues that the trial court erred in providing the jury with the State’s proposed special jury instruction regarding the use of a “toy gun” as a dangerous weapon. In order to seek appellate review of an alleged trial court error, a party must make a contemporaneous objection at trial, and he must state the grounds for the objection. La.C.Cr.P. art. 841; State v. Goal, 01-376 (La.App. 105 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294. Defendant failed to state the nature and grounds for his objection to the special jury instruction and therefore he is not entitled to have this issue reviewed and considered by this Court. See State v. Escobar-Rivera, 11-496 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 7, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411.
Nevertheless, even if considered, defendant’s contention lacks merit. The charge objected to by defendant was a special charge requested by the State which has been used in the past, and has been found to be acceptable. See State v. Woods, 97-0800 (La.App. 1 Cir. 6/29/98), 713 So.2d 1231, 1238, writ denied, 98-3041 (La.4/1/99), 741 So.2d 1281, citing State v. Cittadino, 628 So.2d 251, 255 (La.App. 5 Cir.1993). Here, because there was evidence presented that the gun used by defendant in this case was a BB gun, the instruction was pertinent and correct. The jury could have determined that the BB gun used by defendant was a dangerous weapon since they could have found that the interaction between defendant and Mr. Sosa created a highly charged atmosphere whereby there was danger of serious bodily harm resulting from Mr. Sosa’s fear for his life. Regardless, whether the BB gun constituted a dangerous weapon in the manner used was a question of fact decided by the jury after proper instruction.
Finding that defendant was armed with a dangerous weapon, that the evidence was sufficient to convict defendant of the armed robbery of Mr. Sosa, and that the trial court correctly provided the jury with a pertinent and correct “toy gun” jury instruction, we find no merit to counseled *423 assignment of error number one and pro se assignment of error number three.
MULTIPLE OFFENDER ADJUDICATION
In his first pro se assignment of error, defendant argues that the trial court erred in finding him to be a second felony offender because the State failed to meet | nits burden of proof at the habitual offender hearing. Specifically, defendant contends that his predicate out-of-state guilty plea is invalid and cannot be used for enhancement purposes because the State failed to prove that he was represented by counsel and that his prior conviction would be a felony under the laws of this State.
In his second pro se assignment of error defendant asserts that, should this Court finds that he is precluded from contesting his multiple offender adjudication and sentence, his attorney was ineffective for failing to object and challenge the insufficient evidence presented at the habitual offender hearing.
The State filed a habitual offender bill of information alleging defendant to be a third felony offender. The two predicates alleged in the multiple bill were: 1) an armed robbery conviction committed in Orleans Parish, case number 37-485, and 2) a California conviction for possession of counterfeit United States currency, a violation of 18 USC 472, case number 02 CR 101. The multiple bill further alleged that both predicates were obtained as a result of guilty pleas obtained on March 22, 1996, and June 10, 2002, respectively. Defendant proceeded to a habitual offender hearing on July 19, 2012. At the hearing, federal probation officer Marc Johnson testified that he supervised defendant while he was on probation for his felony federal counterfeiting conviction in case number 02 CR 101, arising out of the Central District of California. Agent Johnson identified defendant in open court as the man he supervised on probation for the federal crime from June of 2002 to August of 2004. The State did not introduce any documentation at the hearing regarding defendant’s California conviction, but did introduce a certified conviction packet with regard to defendant’s Orleans Parish conviction. Based on the testimony of Agent Johnson and the documents introduced into evidence, the trial court found the State proved defendant’s predicate California conviction but not his Orleans Parish conviction, and therefore 112it adjudicated defendant a second felony offender under the multiple bill statute. As such, the trial court vacated defendant’s underlying sentences and re-sentenced defendant as a second offender under La. R.S. 15:529.1.
Defendant now challenges his adjudication as a second felony offender, arguing that the State failed to meet its burden of proof with respect to his California conviction.
To prove a defendant is a habitu-ál offender, the State must prove the prior felony convictions and that the defendant is the same person who was convicted of the prior felonies. State v. Mims, 00-1507 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766, writ denied, 02-0466 (La.2/7/03), 836 So.2d 88. While the State has the initial burden of proof, it need only establish the prior conviction by presenting “competent evidence” that the person was previously convicted of a felony, ie., by introducing certified copies of the minutes of the prior proceedings, the bill of information, matching fingerprints of the accused to those in the record of a prior proceeding, testimony of witnesses to prior crimes, or photographs contained in a duly authenticated record. State v. Breaux, 00-236 (La.App. 5 Cir. 8/29/00), 767 So.2d 904, 909, unit denied, 00-2874 (La.6/29/01), 794 So.2d *424 808; (citing State v. Richmond, 98-1015 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 37; and State v. Bailey, 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 610, writ denied, 98-1458 (La.10/30/98), 723 So.2d 971). The State can also establish identity by having someone like a probation officer come in and testify from personal knowledge that the defendant is the same person he previously supervised after the prior conviction. See State v. DeSalvo, 98-353 (La.App. 5 Cir. 10/14/98), 721 So.2d 938, 942, writ denied, 98-2828 (La.2/26/99), 738 So.2d 1067, (wherein parole officer’s testimony and identification of the defendant was deemed sufficient).
113When the State relies on a pri- or conviction that is based on a guilty plea in proving the defendant’s multiple offender status, and the defendant denies the allegations of the multiple bill, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was 'represented by counsel when it was taken. State v. Shelton, 621 So.2d 769, 779-80 (La.1993). When the state seeks to enhance a sentence based upon a prior plea of guilty entered in a state other than Louisiana, in order to prove the validity of the plea the state need only show that the defendant was represented by counsel. See State v. Mills, 570 So.2d 540 (La.App. 4 Cir.1990); State v. Cressy, 440 So.2d 141 (La.1983); State v. Talbert, 416 So.2d 68 (La.1982).
Once the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity. Shelton, supra. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary. Id. This final burden can be met if the State produces a “perfect transcript” articulating the Boykin[2] colloquy between the defendant and the trial judge, or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript. State v. Collins, 04-255, p. 6 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1154, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62. If the State introduces anything less than a “perfect” transcript, such as a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must weigh the evidence submitted by each party to determine whether the State has met its burden of proving the prior guilty plea was “informed and voluntary, and made with an articulated waiver of the three Boykin rights.” Shelton, 621 So.2d at 780.
[14By 1993 La. Acts 896 § 1, the Louisiana Legislature added La. R.S. 15:529.1(D)(1)(b) regarding the burdens of proof at a multiple offender hearing. The amendment was effective August 15, 1993, which was approximately one month following the decision in Shelton, and provides as follows:
(b) Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, *425 and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
(Emphasis added).
In State v. Windham, 6B0 So.2d 688 (La.1993) (per curiam), without mentioning LSA-R.S. 15:529.1(D)(1)(b), the Louisiana Supreme Court held that a defendant cannot challenge a predicate guilty plea on the basis of non-compliance with Boykin for the first time on appeal:
... In the absence of a contemporaneous objection at the multiple offender hearing, the defendant otherwise may not complain for the first time on review that the records of his guilty pleas introduced by the State at the multiple offender hearing .did not reflect compliance with this court’s Boykin rules.
This Court likewise has precluded a defendant from raising claims for the first time on appeal relating to the State’s ultimate burden under Shelton. State v. Jackson, 99-1256 (La.App. 5 Cir. 7/25/00); 767 So.2d 848, writ denied, 00-2528 (La.10/5/01), 798 So.2d 960. See also State v. Richmond, 98-1015 (La.App. 5 15Cir. 3/10/99), 734 So.2d 33, 37; State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-792 (La.9/16/98), 721 So.2d 477.
Here, because defendant’s counsel did not file a written response or assert an objection to the issue of his lack of representation in the California guilty plea prior to imposition of his enhanced sentences, we find that defendant is precluded from raising this claim for the first time on appeal as it relates to the State’s ultimate burden under Shelton.
Nevertheless, because defendant also asserts that his trial counsel was ineffective for failing to object or challenge the validity of his California conviction on the basis that the State failed to prove he was represented by counsel at the time of his guilty plea, the merits of defendant’s pro se assigned error must be addressed.
Under the Sixth Amendment to the United States Constitution and Article, I, § 13, of the Louisiana Constitution, a defendant is entitled to effective assistance of counsel. State v. Casimer, 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141. To prove ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the Strickland test, the defendant must show: (1) that counsel’s performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. Casimer, 12-678 at 19, 113 So.3d at 1141 (citing Strickland, supra). An error is considered prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Ca-simer, supra (quotations omitted). To prove prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different. Id.
11fiGenerally, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief filed in the trial court, where a full evidentiary hearing can be conducted, rather than on direct appeal. State v. Washington, 03-1135 (La.App. 5 Cir. 1/27/04), 866 So.2d 973, 983. When *426 the record contains sufficient evidence to rule on the merits of the claim, however, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1247, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). Given the nature of this particular claim, the appellate record contains sufficient evidence for this Court to address the merits of defendant’s ineffective assistance of counsel claim.
At the habitual offender proceeding in this case, the only evidence used to establish defendant’s California conviction was the testimony of Agent Johnson, the federal probation officer who supervised defendant in Louisiana subsequent to his conviction. While it appears the State may have met its burden of proving the existence of defendant’s prior guilty plea and his identification through the testimony of Agent Johnson, the State offered no evidence to prove that defendant was represented by counsel when defendant’s guilty plea was taken. Therefore, the State failed to meet its initial burden under Shelton regarding this guilty plea. A guilty plea obtained in violation of a defendant’s right to counsel cannot be used for enhancement. See United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).
Considering the record and lack of proof presented at the habitual offender adjudication in this case, defendant has shown a deficiency in his trial counsel’s performance. As a result of this deficiency, defendant has also established that he [17has been prejudiced by his adjudication as a second felony offender and the enhanced sentences imposed as a direct result of his adjudication. Accordingly, we must vacate the finding that defendant is a multiple offender and enhanced sentences, and remand this matter for further proceedings. Since double jeopardy principles are inapplicable to sentence enhancement proceedings, the State may retry defendant as a multiple offender. See, State v. Brooks, 02-1051 (La.App. 5 Cir. 2/25/03), 841 So.2d 997, 1000, writ denied, 03-0664 (La.6/27/03), 847 So.2d 1271; State v. Raymond, 98-119 (La.App. 5 Cir. 8/25/98), 718 So.2d 1010, 1014.
EXCESSIVE SENTENCE
Defendant’s remaining allegations of error argue that his sentences are excessive and that his counsel was ineffective for failing to file a motion to reconsider sentence. However, since this Court must vacate defendant’s enhanced sentences, any discussion of defendant’s enhanced sentences as excessive, and/or his trial counsel’s failure to object to the excessiveness of his enhanced sentences are rendered moot. See State v. Thomas, 08-813 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 607, unit denied, 09-1294 (La.4/5/10), 31 So.3d 361.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and we find none which merit consideration.
For the above discussed reasons, the defendant’s convictions are affirmed. The defendant’s adjudication as a second felony offender and his enhanced sentences are vacated, and the matter is remanded for further proceedings.
CONVICTIONS AFFIRMED; MULTIPLE OFFENDER ADJUDICATION AND ENHANCED SENTENCES VACATED; CASE REMANDED.

. It was later learned that the gun used in the Shell and Exxon station robberies was a BB gun.

. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).