WILLIAMS, J.
k The defendant, William T. Chisolm, was charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. Following a jury trial, he was convicted as charged. He was sentenced to serve 90 years in prison at hard labor without benefit of probation, parole or sus *1094 pension of sentence. For the following reasons, we affirm.
FACTS
On September 26, 2011, David Alexander and Shane Campbell were conducting an inventory assessment at an Exxon gas station/convenience store on North Market Street in Shreveport, Louisiana. Campbell owned a laptop computer which was inside a laptop bag/briefcase.[1] On the day in question, the computer was in Alexander’s possession and was being used to assist the men in determining the store’s inventory.
During the trial, Alexander testified as follows: he went outside to smoke a cigarette; he encountered the defendant; he had never seen the defendant before; the defendant, who was dressed in black pants and a white shirt, identified himself as “William”; during a casual conversation, the defendant stated that he was from California and he worked in a restaurant in Shreveport; he talked to the defendant for approximately 15 minutes and then went back inside the store; when he and Campbell finished the inventory, he carried the laptop computer, which was inside the laptop bag/briefcase, outside to put it in his vehicle; the defendant approached him as he opened the trunk of the vehicle; the defendant was armed with a small, | ⅞.32 caliber pistol, which he held across his chest “like he didn’t want to expose it in front of everybody”; he “got a good look” at the gun because the defendant was standing approximately six feet away from him when he saw the gun; the gun was real; there was no way it could have been a toy gun; the defendant ordered him to hand over the bag; the defendant grabbed his arm and attempted to “jerk” the bag away from him; he wanted to defend himself, but he released the bag because the defendant had a gun; he is 6'2" and weighed approximately 335 pounds; the defendant was a “slender” black male, approximately 5'8"; when he released the bag, the defendant immediately took it, with the laptop inside, and ran behind the store and into someone’s backyard; when Campbell heard the commotion, he came out of the store and chased the defendant; he called 911; he yelled that the defendant had a gun, trying to get Campbell to stop chasing him; the laptop bag, along with the laptop, was found and returned to them that same day.
Alexander also testified that two years after this incident, he received a letter at his home from the defendant. He then read the letter to the jury. In the letter, the defendant admitted that he took the laptop/bag from Alexander at gunpoint. However, he stated that the gun “was not real.” The defendant apologized to Alexander and stated that a woman named Kyra, who worked at the convenience store, had masterminded the robbery.[2]
Alexander identified the defendant in open court as the man who had |srobbed him. He also identified a black portfolio that the police officers found with the laptop bag. He testified that the portfolio did not belong to either Campbell or him.
*1095 On cross-examination, Alexander testified that while he was talking to the defendant during his smoke break, he noticed that the defendant was carrying a black portfolio. However, he did not see any kind of weapon at that time.
Thomas Shane Campbell also testified at trial. He testified as follows: on September 26, 2011, he and his brother-in-law, Alexander, were working as inventory specialists at the Exxon on North Market; they used a laptop computer, which was carried in a bag; both the computer and the bag belonged to him; while he was finishing the inventory, Alexander went outside for a smoke break; when Alexander came back inside the store, they packed up their equipment; Alexander took the laptop out to the car; while he was paying for some snacks at the register, he heard a “commotion” outside; he saw Alexander pointing and a man running across the parking lot; he went outside and heard Alexander say “He’s got the bag! He’s got the bag!”; he saw a man, who was wearing a white, long-sleeved, button-up shirt and dark pants, running with the laptop bag; he began chasing the man; he followed the man behind the store and through some residential backyards; he saw the man jump a chain link fence into someone’s backyard; after the man jumped the fence, he turned and pointed a gun at him (Campbell); he was approximately 25 yards away from the man when he pointed the gun; when he saw the gun, he stopped chasing the man and jumped behind a tree to hide; the man then disappeared behind a house; the |4laptop bag was found and returned to him later that day; a black portfolio, which was found in the bag, did not belong to him. On cross-examination, Campbell testified that he did not see the portfolio when he was chasing the man.
The state also called Corporal Deitrick Williams, of the Shreveport Police Department, as a witness. Cpl. Williams testified that on September 26, 2011, at approximately 10:48 a.m., he responded to a call in reference to an armed robbery that had occurred at the Exxon gas station/convenience store on North Market. When he arrived, Campbell flagged him down and told him that he had chased the suspect into the woods after the man stole a computer and a laptop bag from Alexander. Cpl. Williams also stated that he interviewed Alexander, who told him that after smoking cigarettes with the suspect outside the Exxon, he went to his vehicle with the laptop bag and attempted to place it in the trunk. The subject approached him with a handgun, took the laptop bag from him and fled the scene. Cpl. Williams further testified that both Alexander and Campbell reported that the subject had a “small, black handgun” and that they believed it was a .38 caliber weapon. He stated that they described the suspect as a black male, approximately 5'9" tall, and weighing 150 to 165 pounds, with a medium complexion and a low haircut; they also stated that he was wearing a white, long-sleeved, button-down shirt, black pants and black shoes.
Corporal Jeffery Hammer, of the Shreveport Police Department, K-9 Division, testified that he responded to the call regarding the armed robbery with his police dog, Jasko, who is trained to retrieve evidence. Cpl. Hammer stated that when he arrived at the scene, he and Jasko went to the wooded |5area where the suspect was last seen. He stated that Jasko tracked the suspect through a wooded area to a Johnny’s Pizza restaurant, where he found a white, long-sleeved, button-up shirt on the ground close to a storage building next to the restaurant. Cpl. Hammer testified that neither he nor Jas-ko touched the shirt.
*1096 Dr. Jessica Esparza, a forensic DNA analyst at the North Louisiana Crime Lab, was accepted by the court as an expert in the field of DNA analysis. She testified regarding the DNA testing of the white shirt found near the Johnny’s Pizza restaurant. Dr. Esparza stated that Heather Torres, the DNA analyst who performed the original analysis in this case, was no longer employed by the North Louisiana Crime Lab. She also stated that she technically reviewed this case to ensure that Ms. Torres followed all protocols and to ensure the scientific integrity of the results. She explained that FBI quality assurance standards require that each DNA analyst’s work be reviewed by another analyst. When she reviewed Ms. Torres’ work, she made sure that the correct protocols were used. She also examined the data to reach her own conclusion and to see if it was consistent with Ms. Torres’ conclusion. Dr. Esparza testified that she reached the same opinion as Ms. Torres in this case.
Dr. Esparza further testified that Ms. Torres matched the DNA evidence taken from the white shirt to a buccal swab retrieved from the defendant. She testified that the probability of finding that the DNA from a cutting of the collar of the shirt was from an individual other than the defendant was approximately one in 414 quadrillion, and that the probability of finding that the DNA from another cutting of the collar of the shirt was |fifrom an individual other than the defendant was approximately one in 1.69 quadrillion.
On cross-examination, Dr. Esparza clarified that when she conducts a technical review, she does not “redo” any of the laboratory work; she simply reviews the case notes. She also stated that she did not prepare a separate report in this matter.
Detective Jack E. Miller, of the Shreveport Police Department, Tactical Robbery Division, testified that he also responded to this armed robbery. Det. Miller identified the white, long-sleeved, button-up shirt that was found on the ground at the Johnny’s Pizza restaurant. He testified that he recovered a black computer bag from the roof of a storage shed in the same area where the shirt was found. Det. Miller stated that Alexander and Campbell were brought to that location, identified the laptop bag and verified that nothing was missing from the bag. They also pointed out a black leather portfolio, that was in the laptop bag, but did not belong to them. Det. Miller stated that he opened the portfolio and discovered several papers which bore the defendant’s name and date of birth. A citation from a court in Los Angeles, California, which had the defendant’s name on it, was also discovered inside the portfolio. Det. Miller stated that he conducted a computer search and verified the defendant’s physical description. He testified that he then developed the defendant as a suspect in the armed robbery. Although the police officers conducted an extensive search for the defendant, he was not apprehended on the day of the incident.
Det. Miller further testified that he obtained video surveillance footage from the Exxon convenience store; the footage depicted the robbery. |7Two surveillance videos were played for the jury. The first video showed a view of the gas pumps at the Exxon and depicted the following: Alexander walking across the parking lot with the laptop bag followed by the defendant, who was carrying a black portfolio; the defendant running back across the parking lot with the laptop bag, followed by Alexander; and, Campbell running out of the Exxon after the defendant. The second video is the view from the parking lot on the side of the Exxon. That video depicted the defendant running with the laptop bag and Campbell chasing him.
*1097 During his investigation of this case, Det. Miller learned that the defendant had left the Shreveport area on a bus to New Orleans. He obtained an arrest warrant and the defendant was arrested at a bus station in New Orleans. After the defendant was brought back to Shreveport, on September 29, 2011, Det. Miller interviewed him at the Caddo Correctional Center. He also retrieved a buccal swab from the defendant for DNA testing.
The defendant’s recorded interview was then played for the jury. During the interview, the defendant admitted that he took Alexander’s bag. He stated that he did not “try to hurt anybody.” The defendant explained that he was dealing with financial stress, and that after he talked to Alexander, he just “snapped.” He also admitted that he had a gun in his portfolio; however, he stated that the gun was “not real.” He stated he threw the gun in the river the next night. Later during the interview, the defendant described the weapon as “like a pellet gun. It’s not really a toy; it’s a pellet gun.” He also stated that he ran away after he took the bag from Alexander. According to the defendant, when he arrived at the Johnny’s Pizza 18restaurant, he removed his shirt, threw the bag on top of the shed, crossed the street, hid in the woods and watched the police officers until it became dark. During the interview, the defendant repeatedly apologized for his actions.
On cross-examination, Det. Miller testified that, he prepared photographic lineups. Alexander identified the defendant as the armed robber; however, Campbell was unable to do so because he only saw the defendant running away.
At the conclusion of the trial, the jury found the defendant guilty as charged of armed robbery. The trial court denied the defendant’s motions for post-verdict judgment of acquittal and new trial. It sentenced him to serve 90 years in prison at hard labor without benefit of probation, parole or suspension of sentence. Subsequently, the trial court denied the defendant’s motion to reconsider his sentence.
The defendant appeals.
DISCUSSION
The defendant contends the evidence was insufficient to prove that he committed the robbery while armed with a “dangerous weapon.” He argues that the weapon used during the commission of the robbery was a toy pellet gun; the gun was never fired; he did not point the gun at Alexander; he did not verbally threaten Alexander; and Alexander did not testify that he feared for his life. Further, the defendant claims that the interaction between Alexander and him did not create such a highly charged atmosphere that Alexander should have feared that he was in danger of serious bodily harm.
When several issues are raised on appeal and one or more questions ^involve the sufficiency of the evidence, the reviewing court should review the sufficiency claims first because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not pro *1098 vide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685.
The standard set forth in Jackson v. Virginia, supra, is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict |inin the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee fundamental due process of law. State v. Sosa, 2005-0213 (La.1/19/06), 921 So.2d 94.
Inin the instant case, the defendant was found guilty of armed robbery. LSA-R.S. 14:64(A) defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The evidence presented at trial overwhelmingly establishes that the defendant took the bag containing the laptop computer from Alexander by the use of force and intimidation. Alexander testified that the defendant attempted to “jerk” the bag away from him; however,, when he saw that the defendant had a gun, he stopped resisting and handed the bag to the defendant. However, most importantly, the evidence presented at trial showed that the defendant confessed to the police officers, as well as in a letter to Alexander, that he took the bag and that he had a “toy” or “pellet” gun. Additionally, the surveillance video proved that the defendant took the bag; and, the defendant’s black portfolio was found inside the laptop bag; the DNA evidence from the white shirt established that the shirt belonged to the defendant.
Therefore, the only issue herein is whether the state proved that the defendant committed the armed robbery while armed with a “dangerous weapon.” Ac *1099 cording to the defendant, the weapon used was a toy pellet gun. He argues the toy gun was not used in a manner calculated or likely to produce death or great bodily harm.
A “dangerous weapon” includes any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. LSA-R.S. 14:2(3). Whether a weapon is dangerous is a factual question for 112the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. Davis, 48,161 (La.App.2d Cir.8/7/13), 121 So.3d 1207.
A person who commits a robbery by pointing an unloaded and unworkable pistol at the victim can be adjudged guilty of armed robbery. State v. Levi, 259 La. 591, 250 So.2d 751 (1971); State v. Lewis, 39,263 (La.App.2d Cir.1/26/05), 892 So.2d 702. Additionally, a toy gun can be considered a dangerous weapon if the jury determines the interaction between the offender and the victim created a highly charged atmosphere whereby there was danger of serious bodily harm resulting from the victim’s fear for his life. State v. Woods, 97-0800 (La.App.1st Cir.6/29/98), 713 So.2d 1231, writ denied, 98-3041 (La.4/1/99), 741 So.2d 1281; State v. Kemp, 39,358 (La.App.2d Cir.3/11/05), 896 So.2d 349, writ denied, 2005-0937 (La.12/9/05), 916 So.2d 1052. See also State v. Green, 409 So.2d 563 (La.1982); State v. Lewis, 39,263 (La.App.2d Cir.1/26/05), 892 So.2d 702; State v. Williams, 36,456 (La.App.2d Cir.10/4/02), 827 So.2d 1286, writ denied, 2002-3071 (La.9/19/03), 853 So.2d 633.
As stated above, the defendant has always maintained that the gun “was not real” and that it was a “toy pellet gun.” However, Alexander and Campbell both testified that they believed the gun was real, and Alexander described the gun as a small caliber pistol. Moreover, Alexander testified that the defendant held the gun across his chest and demanded the bag. He stated that during this time, the defendant grabbed his arm and tried to jerk the bag away from him. When Alexander saw the gun, he complied with the | ^defendant’s demands and released the bag. Also, Campbell testified that during his pursuit of the defendant, the defendant jumped a fence, turned around, and pointed the gun at him. At that point, Campbell stopped chasing after the defendant and jumped behind a tree to hide. This testimony establishes that the interaction between the defendant and the victims created a highly charged atmosphere whereby there was a danger of serious bodily harm resulting from the victims’ fear for their lives. Accordingly, even if the gun was a toy or pellet gun, considering the manner in which the gun was used and the harm caused the victims, the jury could have reasonably concluded that the defendant was armed with a dangerous weapon and, thus, guilty of armed robbery. This assignment of error is without merit.
The defendant also contends the trial court erred in denying, in part, his motion in limine. He argues that the court erred when it ordered that a letter he had written to Alexander be redacted to remove certain references to plea offers, but allowed other portions of the same letter, which contained virtually identical inadmissible plea-offer language, to be admitted into evidence.[3] The court granted *1100 the defense’s motion to remove two of the statements; however, the court refused to order the statement, “surely 10 yrs is enough for what I did,” be redacted from the letter. According to the defendant, there is essentially no difference between the statements because | uboth statements reference a prison term and constitute an admission of guilt. The defendant argues that this ruling constitutes reversible error because the second statement clearly tends to show his guilt.
LSA-C.E. art. 410 provides:
A. General rule. Except as otherwise provided in this Article, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
(1) A plea of guilty or of nolo conten-dere which was later withdrawn or set aside;
(2) In a civil case, a plea of nolo con-tendere;
(3) Any statement made in the course of any court proceeding concerning either of the foregoing pleas, or any plea discussions with an attorney for or other representative of the prosecuting authority regarding either of the foregoing pleas; or
(4) Any statement made in the course of plea discussions with an attorney for or other representative of the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn or set aside.
B. Exceptions. However, such a statement is admissible:
(1) In any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it; or
(2) In a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.
The rules prohibiting the admissibility of statements made during the course of plea discussions serve to promote the negotiated disposition of |1ficriminal cases by giving the defendant protection from involuntary self-incrimination at two ends of the plea-bargaining spectrum: while he is negotiating over the disposition of his case and while he is offering or entering a plea that is rejected or is later withdrawn. State v. Divers, 38,524 (La.App.2d Cir.11/23/04), 889 So.2d 335; State v. Lewis, 539 So.2d 1199 (La.1989). Thus, the rule contemplates the accused making incriminating statements during plea discussions, and seeks to prevent the use of such statements against the accused at trial. State v. Buffington, 97-2423 (La.App.4th Cir.2/17/99), 731 So.2d 340.
In the instant case, the handwritten version of the letter in the record contained all of the references to pleas. However, the typed, redacted version of the letter does not contain any of that language. Additionally, when Alexander read the letter in court during the trial, he did not read the statement, “surely 10 years is enough for what I did.” Because the complained of statement was redacted from the letter and was not read to the jury, the defense’s claim that the trial court erred in denying its motion in limine as to the second statement is without merit.
Moreover, even if the entire letter had been read to the jury, the statements were not inadmissible under LSA-C.E. art. 410. The letter was directed to the victim, not to the district attorney, and the statements therein were not made in the course of plea discussions with an attorney for the *1101 prosecuting authority. This assignment lacks merit.
The defendant further contends the trial court erred in allowing Dr. Esparza to testify as a DNA expert regarding the analysis of the white shirt found by the police officers. He argues that Dr. Espar-za did not personally |1fiperform the DNA testing, nor did she personally observe the testing on which the report was based; therefore, his constitutional right to confront his accuser, namely Heather Torres, was violated. According to the defendant, Dr. Esparza testified that when she does a technical review, she does not “redo” any of the laboratory testing; she simply looks at the case notes.
The Confrontation Clause of the Sixth Amendment acts as an absolute bar to the admission of all out-of-court testimonial evidence unless (1) the witness who made the statement is unavailable to testify in court, and (2) the defendant had a prior opportunity to cross-examine the witness. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). See also State v. Smith, 2004-3140 (La.6/24/05), 906 So.2d 391. An analyst’s report and certification regarding forensic evidence is considered a testimonial statement and is subject to confrontation clause requirements. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). If the report and certification are presented as evidence, then the person called for testimony and cross-examination on the evidence must have conducted or observed the tests on which the report and certification are based. Bullcoming v. New Mexico, — U.S. -, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011). However, in Melendez-Diaz, supra, the Court acknowledged that some states have “Notice and Demand Statutes” which “permit the defendant to assert (or forfeit by silence) his Confrontation Clause right after receiving notice of the prosecution’s intent to use a forensic analyst’s report.” 557 U.S. at 326, 129 S.Ct. at 2541.
In Louisiana, criminal laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certificate of |17the person in charge of the facility. LSA-R.S. 15:499. A party introducing a certificate of analysis under LSA-R.S. 15:499 must provide written notice of intent to offer proof by certificate at least 45 days prior to trial. LSA-R.S. 15:501. The defendant may then demand that the person who conducted the examination and analysis testify by timely filing a written demand within 30 days of the notice of intent. LSA-R.S. 15:501. If the certificate and notice comply with La. R.S. 15:499 and 15:501, then the certificate is admissible and considered prima facie evidence of the facts provided. LSA-R.S. 15:500. However, if the defendant properly demands the testimony at trial of the analyst who performed the tests, then the certificate is not prima facie evidence and the analyst must testify to establish the test results. LSA-R.S. 15:501.
Confrontation rights claims are subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Robinson, 2001-0273 (La.5/17/02), 817 So.2d 1131. The harmless error analysis evaluates whether the guilty verdict actually rendered in the trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Glover, 47,311 (La.App.2d Cir.10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/13), 116 So.3d 659.
In State v. Simmons, 2011-1280 (La.1/20/12), 78 So.3d 743, more than three months before the trial, the state provided the defendant with notice of its intent to *1102 introduce into evidence the crime lab’s certificate of analysis as prima facie evidence that the objects he had discarded contained cocaine. On the morning of the trial, the defendant filed a written | ^opposition to the state’s notice. Initially, the trial court was inclined to agree with the defendant; however, the prosecution informed the court that the lab analyst who performed the tests currently worked for a crime lab in another parish and was not immediately available. Therefore, the court denied the defendant’s objection as untimely. The court of appeal reversed the defendant’s conviction, finding that the introduction of the crime lab report, as opposed to presenting the live testimony of the analyst, constituted a violation of the defendant’s Sixth Amendment right to confront witnesses. The Supreme Court granted the state’s writ application and reversed, stating:
[Rjespondent waived his Sixth Amendment right of confrontation by failing to timely request a subpoena for the analyst who performed the test on the rocks of cocaine. As Melendez-Diaz observed, states remain free to impose reasonable restrictions on a defendant’s assertion of his confrontation rights and the trial court therefore did not abuse its discretion in failing to issue an instanter subpoena for the out-of-parish criminalist at the risk of delaying a one-day trial after respondent failed to timely request that a subpoena issue for the witness. Given the circumstances, the trial court properly admitted the analyst’s certificate in lieu of the analyst’s live testimony.
Here, on February 24, 2012, the state provided the defendant with notice of its intent to introduce into evidence the certified lab report “as proof by certificate in conformity with La. R.S. 15:499-501.” At that point, the defendant had the right to demand the testimony of Ms. Torres, the analyst who performed the DNA testing; the defendant did not do so.
However, rather than merely introducing the report into evidence, the state elected to call Dr. Esparza as a witness to testify as an expert in DNA analysis. Dr. Esparza testified that she performed a technical review of MsJ^Torres’ work in this case. Although Dr. Esparza did not actually perform the testing, she confirmed that the proper protocols were used, examined the data, and testified regarding her own conclusions. Dr. Esparza’s conclusions corroborated the conclusions reached by Ms. Torres — that the DNA found on the shirt was the defendant’s DNA. Therefore, we find that the trial court did not err in allowing Dr. Esparza to testify.
Moreover, even if the trial court erred in allowing the testimony, we find that the admission of Dr. Esparza’s testimony was harmless. Even without the testimony with regard to the DNA testing, the evidence against the defendant was overwhelming. The defendant confessed to this crime, was videotaped committing the robbery, and he was identified as the armed robber by one of the victims. Additionally, the defendant specifically admitted to the police officers that after the armed robbery, he removed his white shirt and left it at the Johnny’s Pizza restaurant. Accordingly, this assignment of error is without merit.
The defendant also contends his near-maximum sentence of 90 years at hard labor is excessive and “punitive.” He argues that his sentence is grossly disproportionate to the severity of the crime and serves no useful purpose, particularly in light of the fact that he is 47 years old. He further argues that, essentially, he has been given what amounts to a life sentence despite the fact that the items he took were returned to the victim on the same day.
*1103 In a supplemental brief, the defendant notes that the record has been supplemented to include the purported extradition pleadings from California, 12nwhich the trial court referred to and took judicial notice of during sentencing. The defendant argues that there is no provision in Louisiana law that allows a court to take judicial notice of suit records in other courts, when the matters do not concern the same case pending before it. According to the defendant, the trial court erred in taking judicial notice of the alleged extradition documents from California which were not signed, dated, or certified.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
LSA-R.S. 14:64(B) provides:
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
A trial court has broad discretion to sentence within the statutory limits. State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641; State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, supra. As a general rule, maximum or near maximum sentences are reserved for the worst ^offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writ denied, 2006-2768 (La.6/22/07), 959 So.2d *1104 494, and writ denied, 2006-2781 (La.6/22/07), 959 So.2d 494.
As stated above, this defendant was sentenced to serve 90 years at hard labor without benefit of probation, parole or suspension of sentence. During the sentencing hearing, the trial court noted the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. The trial court stated:
The defendant’s extensive criminal history, which included the following offenses: distribution of cocaine; a juvenile conviction for first degree murder (1980); possession of a stolen vehicle (1987); simple burglary (1987); aggravated burglary of a business (1988); a finding of a habitual felony status and probation violation (1988); simple escape (1989); distribution of crack cocaine (1993); distribution of cocaine (1995); distribution of cocaine (1997); and theft, obstruction of justice, and simple burglary of an inhabited dwelling (2000).
Documents in case No. KA096425 from a California court, which indicate that the defendant was charged with murder.
The defendant’s conduct during the commission of this offense manifested cruelty to the victim. The court noted that although the defendant did not shoot Alexander, he was “clearly terribly frightened,” as observed by the court while he was testifying.
The court found that an actual pistol was involved in this case, based on the testimony and demeanor of both witnesses. The use of a pistol was corroborated by the defendant’s statement he had thrown the “toy” or “pellet gun” into 1 eathe river. The court expressed that it had difficulty believing that the defendant threw a “toy” gun into the river, and that it believed that act indicated consciousness of guilt.
The victim did not have a weapon to protect himself and immediately surrendered the items to the defendant.
The defendant knew he was creating a risk of death or great bodily harm to more than one person because he showed the weapon to Alexander and pointed the weapon at Campbell.
The defendant used threats of actual violence during the commission of this offense.
After he committed the offense, the defendant lay in wait for a number of hours still possessing a firearm, which could have caused danger to other innocent persons.
Although this offense did not result in significant economic or permanent loss to the victim, a victim of an armed robbery is never relieved of the fear that is caused by that incident.
A dangerous weapon was used and that this offense involved multiple victims for which there has not been a separate sentence imposed, with Campbell being the victim of at least an aggravated assault.
Based on his criminal history, the defendant has been involved in other similar offenses including murder, thefts, and burglaries.
The defendant did not act under strong provocation and the evidence indicated that he acted in a planned, intentional, and systematic scheme to commit armed robbery.
There were no grounds tending to excuse or justify the defendant’s criminal conduct because, although he was employed, he was seeking to get quick cash by way of this armed robbery.
124There was no indication that the defendant had compensated or attempted to compensate the victim for the horror he sustained.
The defendant has been consistently involved in criminal activity throughout his juvenile and adult life, and continuing with the proceedings in California. *1105 Although the defendant referenced family members in some of his documents, there is no indication that they were depending on him as a provider.
There was no indication that the defendant was in poor health and imprisonment would not entail excessive hardship on him or on any dependents. Although the laptop and bag were returned without damage within a short amount of time, they were not returned by the defendant; the police officers found them.
The defendant’s criminal conduct would likely recur if he is ever released from prison.
The court also noted that the defendant stated in a memorandum to the court that he had a significant employment history as a chef and restaurateur. However, the court expressed its belief that the statement was “at best dubious” based on the amount of time the defendant has served in prison. The court found that the defendant was in need of correctional treatment in a custodial environment that could be provided most effectively by his commitment to an institution, and that a lesser sentence would deprecate the seriousness of his crime.
After reviewing this record in its entirety, we find that the sentence imposed is not constitutionally excessive. This defendant has an extensive criminal record, which includes numerous felony convictions. Additionally,_Jjgthis robbery was committed with the use of a dangerous weapon, which by the defendant’s own admission, was at the very least a “pellet” gun. The defendant’s actions caused substantial danger to the two fearful victims, as well as to the general public. In light of the damage the defendant created by his offense and his extensive criminal history, the sentence imposed is not so grossly disproportionate to the severity of the crime that it shocks the sense of justice, nor does this sentence appear to be the needless infliction of pain and suffering. Thus, we find no abuse of the trial court’s discretion. Consequently, the defendant’s sentence is not constitutionally excessive.
We also find that the trial court did not err in considering and taking judicial notice of the defendant’s criminal records from California. The defendant did not make any effort to object to the records and did not dispute the veracity of them during sentencing. Moreover, it is well settled that any and all prior criminal activity, including prior arrests and hearsay evidence of suspected criminal activity, may be considered during sentencing.[4]
[gfiWe have reviewed this record for errors patent and have found none.
*1106 CONCLUSION
For the reasons set forth herein, we affirm the defendant’s conviction and sentence.
AFFIRMED.

. Alexander testified that the value of the laptop computer exceeded $1,000, and the value of the briefcase exceeded $100.

. The defendant stated that a Kyra had told him that she would exit the store on that Monday morning with the money for the deposit and that she would walk to her car, which would be parked on the side of the building. Further, the defendant stated that he was "confused" when Alexander came out of the store with Kyra and he had no idea that he was taking the wrong bag. Conversely, Alexander testified that no one walked out of the store with him on the day of the incident. He stated that someone named "Kyra” was employed at the store; however, she was not working the day of the robbery.

. According to the defendant, the original letter contained the following three references to plea negotiations: (1) "I've begged the DA, Mr. Cox for deal after deal for my part in this crime. 3 yrs for simple robbery (No Deal); 10 yrs for armed robbery (No Deal); 15 yrs for armed robbery (No Deal); Again 15 yrs for armed robbery (No Deal)”; (2) "surely 10 yrs is enough for what I did”; and (3) “surely 7-10 yrs is enough time to serve for my crime.”

. In selecting a proper sentence, a trial court is not limited to considering only a defendant’s prior convictions but may properly review all prior criminal activity. State v. Boyte, 42,763 (La.App.2d Cir.12/19/07), 973 So.2d 900, writ denied, 2008-0175 (La.6/20/08), 983 So.2d 1272; State v. Russell, 40,526 (La.App.2d Cir.1/27/05), 920 So.2d 866, writ denied, 2006-0478 (La.9/29/06), 937 So.2d 851. When evaluating a defendant's criminal history, trial courts may consider evidence at sentencing that would otherwise be inadmissible at trial. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. For example, the trial court may consider records of prior arrests, hearsay evidence of suspected criminal activity, conviction records, and evidence of uncharged offenses or offenses that were nolle prOssed. State v. Myles, supra; State v. Anderson, 30,060 (La.App.2d Cir.10/29/97), 702 So.2d 40. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App.2d Cir.5/9/07), 956 So.2d 779, writ denied, 2007-1442 (La.4/4/08), 978 So.2d 324. Because the scope of information available to the sentencing court is so broad, the defendant has a due process right to rebut prejudicially false or misleading information that may affect the sentencing determination. State v. Myles, supra.